245 N.J. Super. 606 (1990)
586 A.2d 341
EUGENE WHITE, PLAINTIFF,
v.
NEWARK MORNING STAR LEDGER; JOHN DOE (NAME BEING FICTITIOUS); AND ABC CORP. (NAME BEING FICTITIOUS), DEFENDANTS. NEWARK MORNING STAR LEDGER, DEFENDANT THIRD-PARTY PLAINTIFF,
v.
COLIN SERVICES SYSTEMS, INC., THIRD PARTY DEFENDANT.
Superior Court of New Jersey, Law Division Essex County.
Decided November 1, 1990.
*608 Marjorie O. Smith for defendant, third-party plaintiff, Newark Morning Star Ledger (Connell, Foley & Geiser, attorneys; Jeffrey Moryan, on the brief).
Michael John Stone (Hoagland, Longo, Oropollo & Moran, attorneys; Michael John Stone, on the brief), for third-party defendant Colin Service Systems.
KENNETH R. STEIN, J.S.C.
The issues presented by this ruling concern: (i) the right of a third-party tortfeasor to obtain indemnification from an employer pursuant to an express agreement between that tortfeasor and the employer, and (ii) the right of that tortfeasor to name the employer as a third-party defendant in an action brought by the injured employee.
Plaintiff, Eugene White, Jr., (White) was injured while working on the premises of defendant, third-party plaintiff, Newark Morning Star Ledger (Ledger) on or about September 5, 1987. White was then an employee of third-party defendant Colin Service Systems, Inc. (Colin). Colin had contracted to supply labor and services to Ledger pursuant to an agreement between Colin and Ledger dated October 1, 1985 (labor agreement) and White was on the Ledger's premises pursuant to that agreement. White received a worker's compensation award from Colin for his injuries.
*609 In this action White filed a complaint against Ledger charging that while he was on Ledger's premises, Ledger, through its agents, servant and/or employees, was so negligent as to allow a large roll of paper to fall and crush his hand. Ledger filed a third-party complaint against Colin claiming that if it (Ledger) is adjudged liable to White, it is entitled to a defense, indemnification and costs from Colin pursuant to the labor agreement. White did not bring a direct claim against Colin.
Ledger's claim for indemnification against Colin is based on the express terms of the labor agreement, and more particularly paragraph 10. The full text of that paragraph is annexed to this opinion as schedule "A."
Colin moved for summary judgment dismissing Ledger's third-party complaint and this is the ruling on that motion.
The Workers' Compensation Act (act), N.J.S.A. 34:15-1 et seq., provides the exclusive remedy against the employer for a work-related injury sustained by an employee. By accepting the benefits of the act, the employee forsakes a tort action against the employer. Ramos v. Browning Ferris Industries, 103 N.J. 177, 510 A.2d 1152 (1986).
In Port Auth. v. Honeywell Prot. Serv., 222 N.J. Super. 11, 535 A.2d 974 (App.Div. 1987) the court in commenting upon the rights of a third-party tortfeasor against an employer stated:
A corollary to this fundamental policy is that because the employer is removed from tort liability, it is not subject to the provisions of the Joint Tortfeasors Contribution Law (N.J.S.A. 2A:53A-1 et seq.). Thus a "third-party tortfeasor may not obtain contribution from an employer, no matter what may be the comparative negligence of the third party and the employer." Ramos v. Browning Ferris Industries, supra, 103 N.J. at 184 [510 A.2d 1152]. The exclusive-remedy provision precludes a claim for contribution against an employer whose concurring negligence contributed to the injury of an employee. Id. at 185 [510 A.2d 1152]. [citations omitted]
Although a third-party tortfeasor cannot seek contribution from an employer, it may obtain indemnification where that course is specifically permitted by way of an express contract. The Act does not preclude the employer's assumption of a contractual duty to indemnify a third party through an express agreement. Ramos v. Browning Ferris Industries, supra, 103 N.J. at 191 [510 A.2d 1152]. *610 Strong public policy considerations along with the general rules governing the construction of contacts dictate that when the meaning of the indemnification clause is ambiguous, it should be strictly construed against the indemnitee. Ibid. Thus, "a contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms." Ibid. [citations omitted] Subject to this principle, the parties to a contract can generally allocate the burden of risk as to any potential tort liability in any manner they may choose. [at 19-20, 535 A.2d 974]
It is clear that the act does not preclude a third-party tortfeasor from obtaining indemnification from an employer where such indemnification is permitted by an express written agreement between the parties.
In paragraph 10(a) of the labor agreement Colin clearly and unambiguously undertakes
`to indemnify and save Ledger harmless against all liability ... on account of any injury or death to any person (including employees of the parties hereto) ... in any way relating to the performance by Colin ... of [the] Agreement including, but not limited to, paper handling services ... except for such injury ... due to the affirmative negligent acts of Ledger....' [Emphasis supplied]
Injuries to Colin employees while engaged in paper handling services are expressly covered by the indemnification provisions of the labor agreement.
Colin argues that where an agreement purports to indemnify the indemnitee for its own negligence, courts closely scrutinize the agreement to ascertain whether the parties intended to shift liability, and that where the negligence of the indemnitee is the sole cause of the accident, recovery is denied against the indemnitor unless an intent to indemnify is unequivocally spelled out in a contract. See Stier v. Shop Rite of Manalapan, 201 N.J. Super. 142, 150, 492 A.2d 1055 (App.Div. 1985). However, that argument is not applicable to this situation since the labor agreement does not purport to indemnify Ledger for its own affirmative negligence, nor does it purport to indemnify Ledger where its affirmative negligence is the sole cause of the accident. The labor agreement, itself, excepts from the indemnification, losses due to the affirmative negligent acts of Ledger. Further, where the injuries to the employee are due to the *611 affirmative negligent acts of Ledger, paragraph 10(e) provides that Ledger shall provide indemnification to Colin.
As stated earlier, in this action White seeks only relief against Ledger and makes no claim against Colin. That alone does not mean Colin is free from negligence, rather, it can be assumed that White has made no direct claim against Colin because he is precluded from doing so by the act.
If, in this instance, both Ledger and Colin were negligent and proximately caused the accident, Ledger as the third-party tortfeasor will be solely responsible to White. Ramos v. Browning Ferris Industries, supra. Further, absent the indemnification, Ledger alone would bear the financial responsibility for such loss, and would have no recourse against Colin. It is precisely to avoid this result and to circumvent the bar of the act that Ledger sought and obtained the protection of paragraph 10 of the labor agreement. The effect of paragraph 10 is to require Ledger to bear the cost of any recovery resulting from its affirmative negligence, while providing it with indemnification from Colin against any losses not due to its (Ledger's) affirmative negligent acts. That is clearly the intent and purpose of paragraph 10 of the labor agreement.
There remains then the question of how best to allocate the liability as between Ledger, to the extent that liability results from Ledger's affirmative negligent acts, and Colin. The logical and most efficient means of achieving that result will be by proceeding as this case is presently structured, with both Ledger and Colin as parties. That will enable the same jury to fix the damages due from Ledger to White, while also fixing the amount due to Ledger pursuant to the indemnification provisions of the labor agreement.
Colin argues that the Comparative Negligence Act restricts the assessment of negligence to the parties to the suit (N.J.S.A. 2A:15-5.2b) and that an employer is not a proper party to a suit brought by an employee against a third-party *612 tortfeasor. However, the Comparative Negligence Act does not operate to bar the inclusion of Colin in this litigation. First, while it is true that, absent an express indemnification, an employer is not a proper party in a suit brought by an employee against a third-party joint tortfeasor, such is not the present situation. Colin expressly agreed to indemnify Ledger against damages other than those caused by Ledger's affirmative negligence. By entering into such an agreement Colin should have reasonably foreseen that it would become a third-party defendant in any action brought by its employee against Ledger. In short, while the Comparative Negligence Act may restrict the assessment of negligence to the parties to the suit, Colin is quite properly a party to this suit and should have anticipated that it would become a party to such an action.
Second, the allocation of liability or responsibility as between Ledger and Colin is not an allocation to be made under the Comparative Negligence Act. The Comparative Negligence Act calls for a comparison of the negligent conduct of two or more defendants where those defendants were negligent and proximately caused the accident. In this case, the labor agreement requires Colin to indemnify and save Ledger harmless against all liability on account of any injury to any Colin employee, except for such injury as is due to the affirmative negligent acts of Ledger. Thus, while Ledger is required to bear responsibility for its own affirmative negligent acts, Colin is required to indemnify Ledger against all other liability, whether it resulted from the negligence of Colin or otherwise (so long as it did not result from the affirmative negligent acts of Ledger). Again, that is not the allocation of responsibility called for by the Comparative Negligence Act. The indemnification sought by Ledger is not the same as the allocation of aggregate responsibility called for by the Comparative Negligence Act, and is not governed by the Comparative Negligence Act.
It is recognized that as between White and Ledger, Ledger may be required to bear full responsibility for White's damages. *613 However, that does not prevent Ledger from being afforded the benefit of a third-party recovery in the same litigation. Any claimed confusion between White's right to recover from Ledger and Ledger's right to recover from Colin can be avoided by instructions and interrogatories to the jury.
The phrase "affirmative negligent acts" was used in paragraph 10 of the agreement. The distinction between such "affirmative negligent acts" and other negligent acts was not briefed by the parties and was only superficially dealt with at oral argument. That term may have to be more particularly defined when framing instructions for the jury.
Colin also argues that it is entitled to summary judgment because the facts show that the injury-causing negligence, was solely that of Ledger. This was an argument which appeared to have been all but abandoned by Colin at oral argument. There is clearly an issue as to whether the cause of plaintiff's injury was solely caused by Ledger's negligence. For example, on page 27 of White's deposition, he states that "[a]s I was pushing down on the roll, the other Colin employee was pushing up on his end, and then a group of employees pushed back on the roll. My fingers got smashed between the end of the bar that I was holding and the next roll of newsprint...." White also exhibited confusion in distinguishing between the Ledger employees and his Colin co-workers. Thus, on page 28 of his transcript he identifies "Teddy" as a Colin employee while on page 31 in response to a question regarding the names of Star Ledger employees, he answers, "Teddy was one." There is clearly a factual issue as to whether Ledger's negligence was a cause or the sole cause of White's injury.
For the reasons stated, Colin's motion for summary judgment is denied.

SCHEDULE A

10. Insurance and Indemnification

(a) Colin agrees to indemnify and save Ledger harmless against all liability, claim, loss, costs, damages and expenses on *614 account of any injury or death to any person (including employees of the parties hereto) or damage to property (including property of parties hereto) occurring in, arising out of, or in any way relating to the performance by Colin, its agents, employees and sub-contractors of this Agreement including, but not limited to, paper handling services and other day service operations, except for such injury or loss of life or loss of or damage to property due to the affirmative negligent acts of Ledger and this indemnification and hold-harmless provision shall be specifically covered by the insurance required of Colin as set forth below.
(b) Colin shall provide and maintain the following insurance with such insurance companies satisfactory to Ledger, specifically including contractual indemnification liability insurance as set forth in Paragraph 10(a) above in favor of Ledger:
(i) Workmen's Compensation and Employer's Liability Insurance in accordance with the laws of the State of New Jersey;
(ii) Comprehensive General Liability Insurance with bodily injury limits of $100,000. per person, $300,000. per accident involving two or more persons, and $100,000. property damage, written on the occurrence basis. Coverage shall be included for contractual indemnification liability and for personal injury.
(iii) Comprehensive Automobile Liability Insurance which shall provide protection against claims for bodily injury or death and damage to property arising from the operation of motor vehicles. This policy shall include coverage for owned, non-owned, hired and rented vehicles. The limits of liability shall be as provided in (b) above.
(iv) A $2,000,000 Umbrella Liability Policy in excess of the coverage required by (ii) and (iii) above.
(c) Colin shall maintain cargo insurance on property under Colin's care, custody or control (wherever located, including in transit) and physical damage insurance on any vehicles used by Colin in performing its services under this Agreement, with limits equal to the then fair market value of such cargo and vehicles.
(d) The insurance policies required under (a)-(c) above shall, where permissible, include a waiver of subrogation providing that Ledger be released and held harmless from any claims *615 with respect to bodily injury (including occupational disease) suffered by employees of either party hereto and property damage, regardless of the cause of damage, even if arising out of Ledger's negligence.
(e) Except as provided in (d) above, Ledger agrees to indemnify and save Colin harmless against all liability, claim, loss, costs, damages and expenses on account of any injury or death to any person (including employees of the parties hereto) or damage to property (including property of the parties hereto) occurring in, arising out of, or in any way relating to the performance by Colin, its agents, employees and subcontractors of this Agreement including, but not limited to, paper handling services and other day service operations, and which injuries or death, or loss of or damage to property are due to the affirmative negligent acts of Ledger, and this indemnification and hold-harmless provision shall be specifically covered by insurance.
(f) Within one (1) week after this Agreement has been executed by both parties, Colin shall furnish Ledger with a Certificate of Insurance evidencing that the coverages required by Paragraphs 10(a)-(d) above are in effect, and Ledger shall furnish Colin with a Certificate of Insurance evidencing that the coverage required by Paragraph 10(e) above is in effect, and both certificates shall list the effective date of expiration of the policies and effective limits, including a thirty (30) day clause providing notice in the event of cancellation of or material change in the policies indicated.