165 A.3d 769

TWANDA JONES, CO–ADMINISTRATOR OF THE ESTATE OF ABI-AH JONES AND BYRON JONES, CO–ADMINISTRATOR OF THE ESTATE OF ABIAH JONES, PLAINTIFFS–RESPON-DENTS, v. MOREY'S PIER, INC., MOREY'S ATTRACTIONS, LLC, AND THE MOREY ORGANIZATION, INC., DEFEN-DANTS–RESPONDENTS, v. PLEASANTECH ACADEMY EDU-CATION ASSOCIATION, INC., THIRD–PARTY DEFENDANT–APPELLANT.

Argued February 27, 2017—Decided July 27, 2017

*Jason D. Attwood* argued the cause for appellant (*Pashman Stein*, attorneys; *Dawn Attwood*, of counsel; *Jason D. Attwood* and *Dawn Attwood*, on the briefs).

*John H. Osorio* argued the cause for respondents Morey's Pier, Inc., Morey's Attraction, LLC, and the Morey Organization, Inc.

(*Marshall Dennehey Warner Coleman & Goggin*, attorneys; *John H. Osorio, Larry I. Zucker, Adam E. Levy,* and *Walter F. Kawalec, III*, on the briefs).

*Heidi G. Villari* argued the cause for respondents Twanda Jones, co-administrator of the Estate of Abiah Jones and Byron Jones, co-administrator of the Estate of Abiah Jones (*The Beasley Firm*, attorneys).

*Daniel M. Vannella,* Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (*Christopher S. Porrino*, Attorney General, attorney; *Melissa H. Raksa,* Assistant Attorney General, of counsel; *Ashley Gagnon,* Deputy Attorney General, on the brief).

*Susan C. Sharpe* submitted a brief on behalf of amicus curiae New Jersey Municipal Excess Liability Joint Insurance Fund (*Dorsey & Semrau, LLC*, attorneys; *Fred C. Semrau,* of counsel; *Susan C. Sharpe* on the brief).

*Wilson D. Antoine* and *Gary S. Lipshutz* submitted a brief on behalf of amicus curiae City of Newark (*Willie L. Parker*, Corporation Counsel, attorney; *Wilson D. Antoine*, of counsel; *Wilson D. Antoine* and *Gary S. Lipshutz*, on the brief).

JUSTICE PATTERSON delivered the opinion of the Court.

This appeal arises from the tragic death of eleven-year-old Abiah Jones after she fell from a ride in an amusement park. When the accident occurred, Abiah Jones was visiting the amusement park on a school trip organized by her charter school, PleasanTech Academy, operated by the PleasanTech Academy Education Association (Association).

Plaintiffs Twanda Jones and Byron Jones, Abiah Jones's parents and the co-administrators of her estate, filed this wrongful death action against Morey's Pier, Inc., Morey's Attractions, LLC, and the Morey Organization, Inc. (Morey defendants). Plaintiffs allege that their daughter's death resulted from the Morey defendants' negligent operation of the amusement park. Plaintiffs did not name the Association as a defendant. Neither plaintiffs nor the

Morey defendants served notice of a tort claim on the Association within the ninety-day period prescribed by the notice of claims provision of the Tort Claims Act, *N.J.S.A.* 59:8-8.

The Morey defendants filed a third-party claim for contribution and common-law indemnification against the Association, alleging that the Association was negligent and that its negligence was a proximate cause of Abiah Jones's death. The Association moved for summary judgment, invoking the ninety-day deadline of *N.J.S.A.* 59:8-8. The trial court denied the Association's motion for summary judgment on the ground that *N.J.S.A.* 59:8-8 does not apply to contribution or common-law claims asserted by defendants against public entities. We granted the Association's motion for leave to appeal.

The appeal requires that we consider three issues. First, we determine whether *N.J.S.A.* 59:8-8 bars the Morey defendants from asserting contribution and common-law indemnification claims against the Association, which is treated as a public entity for purposes of the Tort Claims Act. Second, we decide whether the jury should be permitted to allocate a percentage of fault to the Association pursuant to the Comparative Negligence Act, *N.J.S.A.* 2A:15-5.1 to -5.8, and the Joint Tortfeasors Contribution Law, *N.J.S.A.* 2A:53A-1 to -5, notwithstanding the parties' failure to serve a notice of claim on the Association in accordance with *N.J.S.A.* 59:8-8. Third, we consider the effect of any allocation of fault by the jury to the charter school on plaintiffs' recovery of damages, in the event that the jury returns a verdict in plaintiffs' favor and the trial court molds the judgment in accordance with *N.J.S.A.* 2A:15-5.2(d).

We reverse the trial court's determination. The plain language of *N.J.S.A.* 59:8-8 requires parties such as the Morey defendants seeking to assert a claim against a public entity to serve a notice of claim within ninety days of the date on which the cause of action accrues. Because the Morey defendants did not serve a timely notice of claim on the Association, their third-party contri-

bution and common-law indemnification claims against the Association are barred.

We hold, however, that the trial court should afford the Morey defendants an opportunity to present evidence at trial that the Association was negligent and that its negligence was a proximate cause of Abiah Jones's death. If the Morey defendants present prima facie evidence, the trial court should instruct the jury to determine whether any fault should be allocated to the Association in accordance with *N.J.S.A.* 2A:15–5.2. Should the jury find that the Association was negligent and that its negligence was a proximate cause of Abiah Jones's death, the trial court should mold any judgment entered in plaintiffs' favor pursuant to *N.J.S.A.* 2A:15–5.2(d) to reduce the damages awarded to plaintiffs by the percentage of fault that the jury allocates to the Association.

I.

We base our account of the facts on the allegations set forth in plaintiffs' complaint and other materials in the summary judgment record presented to the trial court.

Abiah Jones was a student at PleasanTech Academy, a charter school in Pleasantville operated by the Association in accordance with a charter granted by the New Jersey Department of Education. According to plaintiffs, to celebrate the achievements of its honor students at the close of the school year, PleasanTech Academy organized a school trip to an amusement park in Wildwood owned and operated by the Morey defendants.[1] The school trip took place on June 3, 2011.

Plaintiffs allege that Abiah Jones was killed after falling from the "Giant Wheel" amusement ride, a Ferris wheel that is, at its highest point, almost one hundred sixty feet tall. They assert that

---

[1] In its third-party complaint, the Morey defendants assert that defendant Morey's Pier, Inc., has not existed since 1997, when it became part of the Morey Organization.

at the time of the accident, the child was riding alone in a carriage on the "Giant Wheel," contrary to the Morey defendants' operating procedures, which required at least two riders in each carriage, and that high winds made the ride unsafe. Plaintiffs claim that the Morey defendants failed to warn of the dangerous wind conditions, failed to provide adequate safety instructions, failed to install proper safety measures to prevent falls from the "Giant Wheel" carriages, inadequately maintained the locks on the carriages, and failed to lock the door on the carriage from which the child fell.

It is undisputed that neither plaintiffs nor the Morey defendants served a Tort Claims Act notice of claim on the Association pursuant to *N.J.S.A.* 59:8-8 within ninety days of Abiah Jones's death.

Plaintiffs initially attempted to litigate this case in a Pennsylvania forum. On July 7, 2011, they filed a complaint in the Court of Common Pleas of Philadelphia County, Pennsylvania. The Morey defendants moved to dismiss the complaint on *forum non conveniens* grounds. They relied on the New Jersey site of the accident; the New Jersey residence of Abiah Jones and her mother, plaintiff Twanda Jones; the New Jersey locations of PleasanTech Academy and the amusement park; and the absence of any nexus between Pennsylvania and this case other than the Pennsylvania domicile of the child's father, plaintiff Byron Jones.[2] The Morey defendants agreed to waive any statute of limitations defense and accept service of process in New Jersey. Although the Pennsylvania trial court denied the Morey defendants' motion, the Superior Court of Pennsylvania reversed the trial court's determination and dismissed the complaint without prejudice on March 10, 2014.

On June 3, 2013, two years after their daughter's death, plaintiffs filed this wrongful death and survival action. The Morey defendants filed a third-party complaint against the Association. They claimed that the Association negligently organized, super-

---

[2] At the time of Abiah Jones's death, her father was also a New Jersey resident.

vised and chaperoned the field trip to the amusement park, and that the Association's negligence proximately caused Abiah Jones's death. The Morey defendants sought contribution pursuant to the Joint Tortfeasors Contribution Law, as well as common-law indemnification and other relief.

The Association moved for summary judgment pursuant to *Rule* 4:46–2. It contended that because defendants served no notice of claim under *N.J.S.A.* 59:8–8, the Tort Claims Act barred the assertion of the contribution and common-law indemnification claims. The Association suggested to the motion judge that at trial, the jury should be permitted to allocate fault to it pursuant to *N.J.S.A.* 2A:15–5.2, notwithstanding the dismissal of the Morey defendants' cross-claims against it. The Morey defendants countered that their cross-claims were not barred by *N.J.S.A.* 59:8–8 because that provision applies only to claims asserted by plaintiffs. Plaintiffs urged the trial court to reserve decision on the question of an allocation of fault to the Association.

The trial court denied the Association's summary judgment motion. Declining to follow case law to the contrary, the court interpreted *N.J.S.A.* 59:8–8 to limit only a plaintiff's right to assert a claim against a public entity. It concluded that *N.J.S.A.* 59:8–8 does not require the service of a notice of claim as a prerequisite to a defendant's contribution or common-law indemnification claims against a joint tortfeasor that is a public entity.

The Association filed a motion for leave to appeal in the Appellate Division. An Appellate Division panel denied the motion. We granted the Association's motion for leave to appeal. 226 *N.J.* 206, 141 *A.*3d 292 (2016). We also granted the motions of the City of Newark, the New Jersey Municipal Excess Liability Insurance Fund, and the Attorney General to appear as amici curiae.

## II.

The Association urges the Court to reverse the trial court's determination. It states that as a charter school, it is entitled to the protection of the Tort Claims Act's notice provision, *N.J.S.A.*

59:8–8. It contends that the trial court's decision thwarts the Legislature's objectives in enacting the Tort Claims Act. The Association contends that a ruling permitting the jury to allocate a percentage of fault to it pursuant to *N.J.S.A.* 2A:15–5.2 would afford the Morey defendants an opportunity to reduce their liability to plaintiffs, as a substitute for their third-party claim. It urges the Court to refrain from imposing any obligation on it to provide discovery to the parties in this case.

The Morey defendants assert that plaintiffs' failure to serve a notice of claim against the Association should not deprive them of their right to assert contribution and indemnification claims against that entity. They argue that if the Court bars their third-party claims under *N.J.S.A.* 59:8–8, it should authorize the jury to apportion fault to the Association. The Morey defendants seek a ruling directing the trial court to mold any judgment in plaintiffs' favor, so that their share of an award of damages will not exceed the percentage of fault allocated to them by the jury. They also ask the Court to ensure that if their claims against the Association are dismissed, the Association will provide discovery to the parties.

Citing *N.J.S.A.* 2A:15–5.3(a), plaintiffs contend that the liability of the Morey defendants should not be limited to the percentage of fault that the jury allocates to those defendants if that percentage is sixty percent or more. They argue that *N.J.S.A.* 2A:15–5.3(a) is unambiguous and that they are entitled to one hundred percent of any damages that the jury awards.

Amicus curiae the City of Newark argues that *N.J.S.A.* 59:8–8 bars any party that fails to comply with the Tort Claims Act's notice provisions from suing a public entity, even if that public entity is a joint tortfeasor that may otherwise be liable for contribution. The City of Newark urges the Court to authorize the factfinder to allocate fault to the public entity that is immune from suit and to limit any award of damages against the private tortfeasor in accordance with the percentage of fault allocated by

the factfinder, even when that percentage constitutes or exceeds sixty percent.

Amicus curiae New Jersey Municipal Excess Liability Joint Insurance Fund similarly contends that *N.J.S.A.* 59:8–8 bars any claim against a public entity unless a notice of claim is served and supports the allocation of a percentage of liability to an entity that is immune under the Tort Claims Act.

Amicus curiae the Attorney General asserts that the Tort Claims Act mandates a determination that the Association is immune from all claims. The Attorney General argues that the Court may reconcile the statutes at issue by permitting the jury to apportion a percentage of fault to the Association, and limiting the Morey defendants' liability to the percentage of fault that the jury allocates to it.

## III.

### A.

All parties agree that neither plaintiffs nor the Morey defendants served a Tort Claims Act notice on the Association within the time period prescribed by *N.J.S.A.* 59:8–8. Accordingly, no party contended before the trial court, or argues here, that facts material to the summary judgment motion were in dispute; the parties contest only the legal consequences of undisputed facts. *See Rule* 4:46–2(c) (providing that summary judgment should be awarded if record demonstrates "that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law").

When, as here, "no issue of fact exists, and only a question of law remains, this Court affords no special deference to the legal determinations of the trial court." *Cypress Point Condo. Ass'n v. Adria Towers, L.L.C.*, 226 *N.J.* 403, 415, 143 *A.*3d 273 (2016) (citing *Manalapan Realty, L.P. v. Twp. Comm. of Manalapan*, 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995)). We review the trial court's decision de novo.

## B.

■ As the operator of a charter school, the Association may "[s]ue and be sued, but only to the same extent and upon the same conditions that a public entity can be sued." *N.J.S.A.* 18A:36A-6(b). The claims asserted against the Association in this case are therefore subject to the Tort Claims Act.

■ The Tort Claims Act provides "broad but not absolute immunity for all public entities." *Marcinczyk v. N.J. Police Training Comm'n*, 203 *N.J.* 586, 597, 5 *A.3d* 785 (2010). The statute is intended "to bring uniformity to the law in this State with respect to sovereign immunity to tort claims enjoyed by public entities." *Tryanowski v. Lodi Bd. of Educ.*, 274 *N.J.Super.* 265, 268, 643 *A.2d* 1057 (Law Div. 1994). The Act's "guiding principle" is that "immunity from tort liability is the general rule and liability is the exception." *D.D. v. Univ. of Med. & Dentistry of N.J.*, 213 *N.J.* 130, 134, 61 *A.3d* 906 (2013) (quoting *Coyne v. Dep't of Transp.*, 182 *N.J.* 481, 488, 867 *A.2d* 1159 (2005)).

When it enacted *N.J.S.A.* 59:8-8, the Legislature imposed a strict constraint on public entity liability. That provision mandates that "[a] claim relating to a cause of action for death or for injury or damage to person or to property shall be presented ... not later than the 90th day after accrual of the cause of action." *N.J.S.A.* 59:8-8. If notice is not timely served in accordance with the statute, "[t]he claimant shall be forever barred from recovering against a public entity." *Ibid.*; *see also D.D., supra,* 213 *N.J.* at 146, 61 *A.3d* 906 (explaining consequences of party's failure to meet ninety-day deadline); *Rogers v. Cape May Cty. Office of Pub. Defs.*, 208 *N.J.* 414, 420, 31 *A.3d* 934 (2011) (noting that Tort Claims Act establishes procedures for bringing claims, which "include filing of a timely notice").[3]

■ *N.J.S.A.* 59:8-8 is intended

---

[3] *N.J.S.A.* 59:8-9 authorizes a claimant, "within one year after the accrual of his claim" to file an application for leave to serve a late tort claims notice. That

(1) to allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of suit; (2) to provide the public entity with prompt notification of a claim in order to adequately investigate the facts and prepare a defense; (3) to afford the public entity a chance to correct the conditions or practices which gave rise to the claim; and (4) to inform the State in advance as to the indebtedness or liability that it may be expected to meet. [*McDade v. Siazon*, 208 *N.J.* 463, 475–76, 32 *A.*3d 1122 (2011) (internal quotation marks omitted) (quoting *Beauchamp v. Amedio*, 164 *N.J.* 111, 121–22, 751 *A.*2d 1047 (2000)).]

Thus, when it enacted the notice of claim provision, the Legislature sought to afford to public entities an "opportunity to plan for potential liability and correct the underlying condition." *Id.* at 476, 32 *A.*3d 1122.

We have not previously determined whether a defendant's contribution and common-law indemnification claims against a public entity are barred when it fails to serve a notice of tort claim within the time limit imposed by *N.J.S.A.* 59:8–8. Our courts' published decisions addressing that issue reach divergent results.

In three published decisions, the Appellate Division and Law Division viewed a defendant's claims for contribution and indemnification to be beyond the reach of *N.J.S.A.* 59:8–8. *See S.P. v. Collier High Sch.*, 319 *N.J.Super.* 452, 475, 725 *A.*2d 1142 (App. Div. 1999) (construing *N.J.S.A.* 59:8–8 to authorize defendant to file third-party action for contribution, common-law indemnification and contractual indemnification against public entity, despite defendant's failure to comply with *N.J.S.A.* 59:8–8's notice requirement); *Ezzi v. DeLaurentis*, 172 *N.J.Super.* 592, 600, 412 *A.*2d 1342 (Law Div. 1980) ("[P]laintiff's failure to comply with the time and notice provisions of *N.J.S.A.* 59:8–8 will not bar defendants' third-party claim for contribution against the municipality.");

application may be granted "in the discretion of a judge of the Superior Court," if there is a showing of "sufficient reasons constituting extraordinary circumstances" for the claimant's failure to timely serve the notice, and if the public entity will not be "substantially prejudiced thereby." *N.J.S.A.* 59:8–9; *see also D.D., supra*, 213 *N.J.* at 134–35, 61 *A.*3d 906 (applying *N.J.S.A.* 59:8–9); *McDade v. Siazon*, 208 *N.J.* 463, 477, 32 *A.*3d 1122 (2011) (same); *Rogers, supra*, 208 *N.J.* at 427, 31 *A.*3d 934 (same). In this case, neither plaintiffs nor the Morey defendants filed an application pursuant to *N.J.S.A.* 59:8–9.

*Markey v. Skog*, 129 *N.J.Super.* 192, 200, 322 *A.*2d 513 (Law Div. 1974) (holding that because contribution claim is "inchoate right which does not ripen into a cause of action until [the defendant] has paid more than his pro rata portion of the judgment obtained against him by the plaintiff," defendant may assert that right despite failure to serve notice of claim under *N.J.S.A.* 59:8–8); *see also D'Annunzio v. Wildwood Crest*, 172 *N.J.Super.* 85, 88, 91–92, 410 *A.*2d 1180 (App. Div. 1980) (relying on *Markey* to hold that *N.J.S.A.* 59:9–2(e), which prohibits actions "under a subrogation provision in an insurance contract against a public entity or public employee," does not bar defendant's contribution claim for subrogation).

In two other published opinions, trial courts construed *N.J.S.A.* 59:8–8 to bar all claims, including contribution and indemnification claims, if the claimant failed to serve a Tort Claims Act notice within the ninety-day period set forth in the statute. *See Estate of Kingan v. Estate of Hurston*, 189 *N.J.Super.* 383, 384–85, 354 *A.*2d 109 (Law Div. 1976) (holding that "[t]here is no sense in the Legislature carefully prescribing that a notice be given to governmental agencies if the courts can emasculate the statute's intent by judicial construction" and dismissing third-party claims against public entity given claimant's failure to serve notice of claim under *N.J.S.A.* 59:8–8); *Cancel v. Watson*, 131 *N.J.Super.* 320, 322, 329 *A.*2d 596 (Law Div. 1974) (barring third-party contribution and indemnification claims against municipality based on noncompliance with terms of *N.J.S.A.* 59:8–8).

We concur with the analysis set forth in *Kingan* and *Cancel*, in which the courts properly focused on *N.J.S.A.* 59:8–8's plain language. *See Wilson v. City of Jersey City*, 209 *N.J.* 558, 572, 39 *A.*3d 177 (2012) (noting that in statutory construction, "[o]ur paramount goal . . . is to give effect to the Legislature's intent" (citing *State v. Maguire*, 84 *N.J.* 508, 514, 423 *A.*2d 294 (1980)), and that "[w]hen that intent is revealed by a statute's plain language—ascribing to the words used 'their ordinary meaning

and significance'—we need look no further" (quoting *DiProspero v. Penn*, 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005))).

The statute is expansively phrased. The Legislature did not distinguish between a plaintiff's claim and a defendant's cross-claim or third-party claim against a public entity. *See N.J.S.A.* 59:8–8. It did not exempt from the tort claims notice requirement a defendant's claim for contribution and indemnification, or any other category of claims. *See ibid.* In short, the statute's import is clear: it governs contribution and indemnification claims brought by defendants, as it governs direct claims asserted by plaintiffs.

Were we to interpret *N.J.S.A.* 59:8–8 to permit a defendant to assert a contribution or indemnification claim against a public entity or employee months or years after the plaintiff's claim accrued, we would undermine the Legislature's intent: to permit public entities to promptly investigate claims, correct the conditions or practices that gave rise to the claim, prepare a defense, and assess the need for reserves. *McDade, supra,* 208 *N.J.* at 475–76, 32 *A.*3d 1122; *Beauchamp, supra,* 164 *N.J.* at 121–22, 751 *A.*2d 1047. Moreover, a judicial determination excluding contribution and indemnification claims from the tort claims notice requirement would contravene the public policy stated by the Legislature in the Tort Claims Act itself: "public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established herein." *N.J.S.A.* 59:1–2. "In light of that overriding policy, the [Tort Claims Act] has been construed to allow the finding of liability against public entities only when permitted by the Act." *Frugis v. Bracigliano,* 177 *N.J.* 250, 275, 827 *A.*2d 1040 (2003). The Tort Claims Act does not permit the imposition of liability on the Association by direct claim, cross-claim, or third-party claim, and we do not revise its terms.

Accordingly, we hold that when a defendant does not serve a timely notice of claim on a public entity pursuant to *N.J.S.A.* 59:8–8 and is not granted leave to file a late notice of claim under *N.J.S.A.* 59:8–9, the Tort Claims Act bars that defendant's cross-

claim or third-party claim for contribution and common-law indemnification against the public entity.

Given that neither plaintiffs nor the Morey defendants served a timely notice of claim under *N.J.S.A.* 59:8–8 or invoked *N.J.S.A.* 59:8–9's procedure for obtaining judicial approval of a late-served tort claims notice, the Association is entitled to summary judgment dismissing the Morey defendants' third-party complaint with prejudice.

## C.

### 1.

When *N.J.S.A.* 59:8–8 is applied to dismiss a defendant's cross-claim or third-party complaint against a public entity or public employee, it may deprive a defendant of its right to pursue a claim against a joint tortfeasor before the defendant is aware that the claim exists. As the Appellate Division observed in *S.P.*, *supra*, a defendant "may not even learn that he has a potential contribution claim within this period, since the plaintiff may not file suit until well after the 90–day period." 319 *N.J.Super.* at 475, 725 *A.*2d 1142 (quoting *Perello v. Woods*, 197 *N.J.Super.* 539, 546, 485 *A.*2d 350 (Law Div. 1984)).

■ In some circumstances, however, the statutory scheme for the allocation of fault to joint tortfeasors, prescribed by the Comparative Negligence Act and Joint Tortfeasors Contribution Law, may mitigate the impact of *N.J.S.A.* 59:8–8 on a defendant whose third-party claim or cross-claim for contribution is barred.[4]

---

4 The common-law indemnification claim asserted by the Morey defendants and dismissed pursuant to *N.J.S.A.* 59:8–8 in this case is distinct from defendants' statutory contribution claim. Neither the Comparative Negligence Act nor the Joint Tortfeasors Contribution Act governs a common-law indemnification claim, and an allocation of fault pursuant to those statutes is unrelated to such a claim. *See Gulf Oil Corp. v. ACF Indus., Inc.*, 221 *N.J.Super.* 420, 431, 534 *A.*2d 1025 (App. Div. 1987), *certif. denied*, 111 *N.J.* 613, 546 *A.*2d 532 (1988); *White v.*

The Comparative Negligence Act was designed to further the principle that "[i]t is only fair that each person only pay for injuries he or she proximately caused." *Fernandes v. DAR Dev. Corp.*, 222 *N.J.* 390, 407, 119 *A.*3d 878 (2015) (quoting *Waterson v. Gen. Motors Corp.*, 111 *N.J.* 238, 267, 544 *A.*2d 357 (1988)). To that end, in a negligence or strict liability action "in which the question of liability is in dispute," the trier of fact makes two determinations:

(1) The amount of damages which would be recoverable by the injured party regardless of any consideration of negligence or fault, that is, the full value of the injured party's damages.

(2) The extent, in the form of a percentage, of each party's negligence or fault. The percentage of negligence or fault of each party shall be based on 100% and the total of all percentages of negligence or fault of all the parties to a suit shall be 100%.

[*N.J.S.A.* 2A:15–5.2(a).]

After the factfinder determines the total damages and allocates fault in accordance with *N.J.S.A.* 2A:15–5.2(a), the trial court molds the judgment based on those findings. *N.J.S.A.* 2A:15–5.2(d). In that calculation, the judge reduces the damages "by the percentage of negligence attributable to the person recovering." *N.J.S.A.* 59:9–4. Under another provision, the plaintiff may recover "[t]he full amount of the damages from any party determined by the trier of fact to be 60% or more responsible for the total damages." *N.J.S.A.* 2A:15–5.3(a). The plaintiff's recovery from "any party determined by the trier of fact to be less than 60% responsible for the total damages" is limited to "[o]nly that percentage of the damages directly attributable to that party's negligence or fault," as determined by the factfinder. *N.J.S.A.* 2A:15–5.3(c).

A defendant compelled to pay more than the percentage of damages corresponding to the jury's allocation of fault to that defendant ordinarily has a remedy under the Comparative Negligence Act: a claim for "contribution from the other joint tortfea-

*Newark Morning Star Ledger*, 245 *N.J.Super.* 606, 612, 586 *A.2d* 341 (Law Div. 1990).

sors." *N.J.S.A.* 2A:15–5.3(e). The contribution claim is governed by the Joint Tortfeasors Contribution Law, in which the Legislature declared that "[t]he right of contribution exists among joint tortfeasors." *N.J.S.A.* 2A:53A–2. "The Joint Tortfeasors Contribution Law was enacted to promote the fair sharing of the burden of judgment by joint tortfeasors and to prevent a plaintiff from arbitrarily selecting his or her victim." *Holloway v. State*, 125 *N.J.* 386, 400–01, 593 *A.2d* 716 (1991) (citation omitted). The statute provides that where an injury is caused by the conduct of joint tortfeasors, and a joint tortfeasor pays the judgment "in whole or in part," that party shall be entitled to recover contribution from other joint tortfeasors "for the excess so paid over his pro rata share." *N.J.S.A.* 2A:53A–3.

■ Applied together, "[t]he Comparative Negligence Act and the Joint Tortfeasors Contribution Law comprise the statutory framework for the allocation of fault when multiple parties are alleged to have contributed to the plaintiff's harm." *Town of Kearny v. Brandt*, 214 *N.J.* 76, 96, 67 *A.3d* 601 (2013). As this Court has observed:

> The modified comparative negligence approach reflected by our statute provides a fairer framework for imposing liability, apportioning losses, and allowing redress. Our modified joint and several liability statute also promotes redress to plaintiffs and provides for a fair apportionment of damages as among joint defendants. When applied together, the statutes implement New Jersey's approach to fair apportionment of damages among plaintiffs and defendants, and among joint defendants.
>
> [*Erny v. Estate of Merola*, 171 *N.J.* 86, 98–99, 792 *A.2d* 1208 (2002) (citations omitted).]

■ The two statutes "promote 'the distribution of loss in proportion to the respective faults of the parties causing that loss.'" *Town of Kearny, supra,* 214 *N.J.* at 102, 67 *A.3d* 601 (internal quotation marks omitted) (quoting *Brodsky v. Grinnell Haulers, Inc.*, 181 *N.J.* 102, 114, 853 *A.2d* 940 (2004)). They ensure that damages are ordinarily apportioned to joint tortfeasors in conformity to the factfinder's allocation of fault. *Ibid.*

2.

A trial court's application of the Comparative Negligence Act and Joint Tortfeasors Contribution Law is complicated when, as here, a party alleged to be a joint tortfeasor is not a defendant at the time of trial. In a series of decisions, our courts have considered whether a factfinder may apportion fault in such a setting.

In general, "our courts have barred apportionment where, as a matter of law, [the person or entity to whom an allocation of fault is sought] could not under any circumstances be a joint tortfeasor under *N.J.S.A.* 2A:53A–2." *Town of Kearny, supra,* 214 *N.J.* at 102, 67 *A.*3d 601 (citing *Brodsky, supra,* 181 *N.J.* at 115, 853 *A.*2d 940).[5] In other decisions, however, this Court and the Appellate Division have permitted a factfinder to allocate fault to an individual or entity, notwithstanding the fact that at the time of trial that individual or entity is not liable to pay damages to the plaintiff, and the allocation may reduce the amount of damages awarded to the plaintiff.

This Court's first decision recognizing that principle was *Young v. Latta,* 123 *N.J.* 584, 589 *A.*2d 1020 (1991). There, the plaintiff in

---

[5] In *Ramos v. Browning Ferris,* the Appellate Division rejected the argument of the defendant supplier of workplace equipment that the jury should allocate fault to the plaintiff's employer, which was immune from civil liability under any circumstances under the Workers' Compensation Act, *N.J.S.A.* 34:15-1 to –146. *Ramos v. Browning Ferris Indus. of S. Jersey, Inc.,* 194 *N.J.Super.* 96, 106, 476 *A.*2d 304 (App. Div. 1984), *rev'd on other grounds,* 103 *N.J.* 177, 510 *A.*2d 1152 (1986). In *Bencivenga v. J.J.A.M.M., Inc.,* the Appellate Division denied a defendant's request that the jury allocate fault to an unidentified individual who had assaulted the plaintiff on the defendant's premises and was named in the complaint as a fictitious defendant pursuant to *Rule* 4:26-4. 258 *N.J.Super.* 399, 406–07, 609 *A.*2d 1299 (App. Div.), *certif. denied,* 130 *N.J.* 598, 617 *A.*2d 1220 (1992). *But see Krzykalski v. Tindall,* 448 *N.J.Super.* 1, 8, 150 *A.*3d 1 (App. Div. 2016) (finding that jury may apportion fault to uninsured motorist even if not labeled "party"), *certif. granted,* 229 *N.J.* 622, 164 *A.*3d 412 (2017); *Cockerline v. Menendez,* 411 *N.J.Super.* 596, 619, 988 *A.*2d 575 (App. Div.) ("[T]o preclude defendants from seeking an apportionment of liability against the phantom [defendants] ... frustrates the purposes of the joint tortfeasor and comparative fault law. The trial court erred when it precluded the jury from making such an apportionment."), *certif. denied,* 201 *N.J.* 499, 992 *A.*2d 793 (2010).

a medical malpractice action settled with one physician defendant and proceeded to trial against another physician. *Id.* at 596–97, 589 *A.*2d 1020. Although the non-settling physician had not asserted a contribution claim against the settling defendant, the Court permitted the jury to allocate fault to the settling defendant. *Ibid.* It held that "a non-settling defendant may seek a credit in every case in which there are multiple defendants, whether or not a cross-claim for contribution has been filed." *Id.* at 596, 589 *A.*2d 1020. The Court noted that "a non-settling defendant's right to a credit [for the percentage of fault allocated to the settling defendant] takes the place of contribution rights extinguished by the settlement." *Id.* at 595, 589 *A.*2d 1020; *see also Kranz v. Schuss*, 447 *N.J.Super.* 168, 181–82, 146 *A.*3d 647 (App. Div.) (holding that "[t]he equitable result is to permit defendants to have any judgment that plaintiffs may secure against them reduced by the amount of fault a jury attributes" to New York defendants, not subject to New Jersey jurisdiction, who settled separate action in New York), *certif. denied*, 228 *N.J.* 424, 157 *A.*3d 843 (2016).

The allocation procedure discussed in *Young, supra,* has been held to govern a range of circumstances beyond the settling-defendant situation in which that case arose. 123 *N.J.* at 586, 589 *A.*2d 1020. In *Brodsky, supra,* this Court reversed a motor vehicle negligence judgment and remanded for a new trial on the ground that the trial court improperly gave the jury an ultimate-outcome instruction that a defendant whose fault was found to be sixty percent or more would be liable for the total damages awarded. 181 *N.J.* at 113–16, 853 *A.*2d 940. In reaching that holding, the Court noted that the jury should assess the fault of an uninsured driver notwithstanding the trial court's dismissal of the claims against that driver because those claims were discharged in bankruptcy. *Ibid.*

In *Town of Kearny, supra,* 214 *N.J.* at 103–04, 67 *A.*3d 601, although the statute of repose, *N.J.S.A.* 2A:14–1.1(a), barred the claims against a defendant in a construction dispute, we authorized the allocation of fault to that defendant at trial. There, we noted

that "apportionment of fault under the Comparative Negligence Act and the Joint Tortfeasors Contribution Law does not turn on whether the plaintiff is in a position to recover damages from the defendant at issue" and that apportionment is not necessarily barred by virtue of "statutory constraints on a plaintiff's ability to recover from a given defendant." *Id.* at 103, 67 *A.*3d 601 (citing *Brodsky, supra,* 181 *N.J.* at 116, 853 *A.*2d 940; *Bolz v. Bolz,* 400 *N.J.Super.* 154, 161–62, 946 *A.*2d 596 (App. Div. 2008); *Johnson v. Mountainside Hosp.,* 239 *N.J.Super.* 312, 319, 571 *A.*2d 318 (App. Div.), *certif. denied,* 122 *N.J.* 188, 584 *A.*2d 248 (1990)). In *Town of Kearny,* the remaining defendants were entitled to an allocation of fault against the defendant dismissed pursuant to the statute of repose, with any allocation to the dismissed party reducing the award of damages to the plaintiff. *Id.* at 103–04, 67 *A.*3d 601.

The appellate panel deciding *Bolz, supra,* 400 *N.J.Super.* at 159–60, 946 *A.*2d 596, considered the interplay of the Tort Claims Act, the Comparative Negligence Act and the Joint Tortfeasors Contribution Law. In *Bolz,* the Tort Claims Act barred both the plaintiff and a defendant from asserting claims against a public entity and public employee because the plaintiff was found not to have sustained an injury meeting the statutory criteria of *N.J.S.A.* 59:9–2(d). *Id.* at 160–61, 946 *A.*2d 596. The panel held that the defendant "was entitled to have the jury determine each party's percentage of negligence or fault in causing the injury," and that if that defendant was determined to be less than sixty percent at fault, "he would be responsible to pay damages only for his percentage of fault." *Id.* at 160, 946 *A.*2d 596.

In *Johnson, supra,* 239 *N.J.Super.* at 319–20, 571 *A.*2d 318, another appellate panel extended the allocation principle to a setting in which a joint tortfeasor remained a defendant at trial but was not liable to pay damages in excess of a statutory limit. There, a section of the Charitable Immunity Act, *N.J.S.A.* 2A:53A–7 to –11, imposed a cap on the quantum of damages that could be imposed on a hospital. *Ibid.* Despite that cap, the Appellate Division held that the jury was permitted to allocate a

percentage of fault to the hospital, potentially reducing the total damages to be awarded to the plaintiff. *Ibid.*

Our courts have thus held in several settings that even if the claims against a defendant are dismissed by virtue of the operation of a statute, apportionment of fault to that defendant is required by the Comparative Negligence Act and the Joint Tortfeasors Contribution Law. *See Town of Kearny, supra,* 214 *N.J.* at 103, 67 *A.*3d 601; *Brodsky, supra,* 181 *N.J.* at 116–18, 853 *A.*2d 940; *Bolz, supra,* 400 *N.J.Super.* at 159–60, 946 *A.*2d 596; *Burt v. W. Jersey Health Sys.,* 339 *N.J.Super.* 296, 304–05, 771 *A.*2d 683 (App. Div. 2001). As those decisions recognize, allocation of a percentage of fault to a joint tortfeasor that is not a defendant at trial may afford to a remaining defendant the practical benefit of the contribution claim to which it is entitled under the Comparative Negligence Act, *N.J.S.A.* 2A:15-5.3(e), and the Joint Tortfeasors Contribution Law, *N.J.S.A.* 2A:53A-2, -3.

### 3.

Against that backdrop, we consider whether the objectives of the Tort Claims Act, the Comparative Negligence Act and the Joint Tortfeasors Contribution Law are furthered by an allocation of fault to the Association if the Morey defendants present prima facie evidence at trial that negligent conduct by the Association was a proximate cause of Abiah Jones's death. When, as here, we construe multiple statutes, we follow the principle that "[s]tatutes that deal with the same matter or subject should be read *in pari materia* and construed together as a unitary and harmonious whole." *St. Peter's Univ. Hosp. v. Lacy,* 185 *N.J.* 1, 14–15, 878 *A.*2d 829 (2005) (internal quotation marks omitted) (quoting *In re Adoption of a Child by W.P. & M.P.,* 163 *N.J.* 158, 182, 748 *A.*2d 515 (2000) (Poritz, C.J., dissenting)).

In accord with the legislative policy to ensure prompt notice to public entities of potential claims against them, the Tort Claims Act bars any claims against the Association in this case. *N.J.S.A.* 59:8-8. In the allocation provisions of the Comparative Negligence

Act, and the contribution right created by the Joint Tortfeasors Contribution Law, the Legislature has expressed a policy in favor of "a fair apportionment of damages as among joint defendants" in accordance with the factfinder's allocation of fault. *Erny, supra,* 171 *N.J.* at 99, 792 *A.*2d 1208; *see also N.J.S.A.* 2A:15-5.2(d), – 5.3(e); *N.J.S.A.* 2A:53A-2, –3. A ruling permitting the Morey defendants to seek an allocation of fault to the Association at trial harmonizes and furthers the three statutes' separate goals.

Authorizing the Morey defendants to seek an allocation of fault to the Association is an equitable result in the circumstances of this case. Despite the New Jersey location of the accident and the New Jersey domicile of all parties when that accident occurred, plaintiffs elected to bring their action in a Pennsylvania court which may not have had personal jurisdiction over the Association, the operator of a New Jersey charter school. When the Pennsylvania appellate court granted defendants' motion to dismiss on *forum non conveniens* grounds, and this action was finally instituted in a New Jersey court, the ninety-day period for the service of a Tort Claims Act notice on the Association under *N.J.S.A.* 9:2– 2, and the one-year period for moving before a Superior Court judge for leave to serve a late notice under *N.J.S.A.* 9:2–2, had long expired. The equities thus weigh against plaintiffs, whose Pennsylvania strategy thus deprived the Morey defendants of the opportunity to preserve their right to file a cross-claim against the Association.

■ Moreover, the procedural posture of this case allows for a fair determination of the Association's alleged fault. The parties have long been on notice of the Morey defendants' intention to seek the apportionment of a percentage of fault to the Association at trial.[6] Limited discovery, overseen by the trial court in accor-

---

[6] In *Young, supra,* the Court stressed the importance of notice to the plaintiff, "as early in the case as possible," that a non-settling defendant would seek an allocation of fault to a settling defendant, and cautioned courts and parties that a non-settling defendant's delay in providing that notice may bar the allocation.

dance with the court rules, will afford the Morey defendants the opportunity to prove the fault of the Association and give plaintiff the opportunity to gather evidence to oppose those proofs.[7]

Accordingly, if the Morey defendants present prima facie evidence of the Association's negligence when the case proceeds to trial, the trial court should instruct the jury to determine whether the Morey defendants have proven by a preponderance of the evidence that the Association was negligent and that its negligence was a proximate cause of Abiah Jones's injuries and death.[8]

4.

Finally, we consider the Morey defendants' argument that if plaintiffs prevail at trial and the trial court molds the judgment pursuant to *N.J.S.A.* 2A:15–5.2(d), the court should limit the Morey defendants' liability for damages to any percentage of fault that the jury apportions to them, whether or not that percentage meets the sixty-percent threshold of *N.J.S.A.* 2A:15–5.3(a).

---

123 *N.J.* at 597, 589 A.2d 1020. *Rule* 4:7–5, which codifies the allocation procedure set forth in *Young*, requires that the plaintiff be "fairly apprised prior to trial that the liability of the settling defendant remained an issue and was accorded a fair opportunity to meet that issue at trial." *R.* 4:7–5(c); *see also* Pressler & Verniero, *Current N.J. Court Rules*, comment 2.2 on *R.* 4:7–5 (2017). A defendant should similarly provide prompt notice to the plaintiff and other defendants that it intends to seek an allocation of fault to a joint tortfeasor dismissed from the action by virtue of *N.J.S.A.* 59:8–8.

7 We do not agree with the Morey defendants that the Association should remain a defendant in this case in order to provide discovery. The Association need not be a defendant in order to be subject to discovery. See, e.g., *R.* 4:14–7(a) (authorizing service of subpoena on witness for deposition and production of documents). On remand, the trial court should ensure that the Association responds to all parties' reasonable requests for discovery.

8 In the limited record before the Court, the Morey defendants do not describe the evidence that they would offer to prove that the Association, the operator of a charter school, was negligent and that its negligence was a proximate cause of Abiah Jones's amusement park accident. We take no position as to whether there exists any such evidence in this case.

The Morey defendants rely on the Appellate Division's analysis in *Burt, supra,* 339 *N.J.Super.* at 305–10, 771 *A.2d* 683. There, an Appellate Division panel harmonized the allocation scheme of the Comparative Negligence Act and the Joint Tortfeasors Contribution Law with the Affidavit of Merit Act, *N.J.S.A.* 2A:53A–27 to – 29. *Id.* at 307–08, 771 *A.2d* 683. The trial court had dismissed the plaintiff's medical malpractice claim against the anesthesiologists who had treated her because she did not timely file an affidavit of merit supporting her malpractice claims against them, as required by the Act. *Id.* at 302–03, 308, 771 *A.2d* 683. The court granted the plaintiff's application to bar the remaining defendants, the treating hospital and nurses, from asserting at trial that the dismissed anesthesiologists were negligent. *Id.* at 309–10, 771 *A.2d* 683.

The Appellate Division reversed the trial court's determination. *Id.* at 311, 771 *A.2d* 683. It acknowledged the Legislature's intent, in enacting the Comparative Negligence Act and the Joint Tortfeasors Contribution Law, was to "provide that ordinarily each tortfeasor will respond in damages according to its own adjudicated percentage of fault." *Id.* at 304, 771 *A.2d* 683. The panel held that the defendant hospital and nurses were entitled to an allocation of fault against the dismissed anesthesiologists. *Id.* at 307–10, 771 *A.2d* 683. It ruled that the "plaintiff's recovery must be diminished by" any percentage of fault attributed to the anesthesiologists, even if the jury were to allocate sixty percent or more of the fault to the remaining defendants. *Id.* at 307, 771 *A.2d* 683. The panel reasoned:

> To hold otherwise would deprive the [remaining] defendants of their right to seek contribution from [the anesthesiologists], even though the [remaining] defendants are found to be sixty percent or more responsible for the total damages. Again, the [remaining] defendants should not be prejudiced by the failure of plaintiff to file the required Affidavit of Merit.
>
> [*Id.* at 308, 771 *A.2d* 683.]

The panel recognized that it had "denied plaintiff the ability to recover all her damages from the [remaining] defendants if the jury found them to be sixty percent or more responsible for plaintiff's damages." *Id.* at 309, 771 *A.2d* 683. It concluded, howev-

er, that its remedy was essential to preserve the remaining defendants' statutory right to a cross-claim in the event that the defendants were required to pay damages in excess of their allocated percentages of fault. *Ibid.*

This Court has not previously decided a case in which a party has requested that the trial court mold the judgment in accordance with the Appellate Division's analysis in *Burt.*[9] In the circumstances of this case, we consider the Appellate Division's analysis in *Burt* to effectively reconcile the governing statutes.

█ The Comparative Negligence Act provides that a plaintiff is entitled to collect the full amount of the damages awarded from any party that the factfinder determines to be sixty percent or more responsible for the total damages. *N.J.S.A.* 2A:15-5.3(a). In a different subsection of the same statute, the Act affords to a defendant "compelled to pay more than his percentage share" of the damages a contribution claim against joint tortfeasors. *N.J.S.A.* 2A:15-5.3(e). The Joint Tortfeasors Contribution Law, *N.J.S.A.* 2A:53A-3, defines that contribution claim. Considered together, the three provisions envision an equitable outcome: if the plaintiff collects the full amount of damages from a defendant adjudged to be sixty percent or more but less than one hundred percent at fault, that defendant may assert a contribution claim against a joint tortfeasor for any damages in excess of its allocated share. *N.J.S.A.* 2A:15-5.3(a), 5.3(e); *N.J.S.A.* 2A:53A-3. With the

---

9 Although we cited *Burt* in our opinions in *Brodsky* and *Town of Kearny* on the question whether fault should be allocated to a dismissed defendant, we did not address the molding of the judgment in those cases, other than to note the Comparative Negligence Act's provisions authorizing a plaintiff to collect one hundred percent of the damages from a defendant adjudicated sixty percent or more at fault. *See Town of Kearny, supra,* 214 *N.J.* at 98, 102, 67 *A.*3d 601 (citing *Burt* on allocation issue, and noting *N.J.S.A.* 2A:15-5.3(c)'s rule on liability of defendant found to be sixty percent or more at fault); *Brodsky, supra,* 181 *N.J.* at 113, 853 *A.*2d 940 (citing *Burt* for principle that fault should be allocated to party dismissed from action and damages award against remaining defendant reduced, but characterizing rule as applicable to defendants allocated less than sixty percent of fault).

benefit of its contribution claim against joint tortfeasors, the defendant will ordinarily pay a percentage of damages that is consonant with the factfinder's allocation of fault. *Ibid.*

As the Appellate Division recognized in *Burt, supra,* a joint tortfeasor's statutory right to a dismissal of the claims against it could disrupt the allocation scheme. 339 *N.J.Super.* at 308, 771 *A.*2d 683. In that case, because the Affidavit of Merit Act barred all claims against the anesthesiologist defendants, the remaining defendants' right to a contribution claim would have been nullified if they were adjudged sixty percent negligent but required to pay one hundred percent of the damages. *Ibid.* To the panel deciding *Burt,* a ruling limiting the defendants' liability to the percentage allocated by the jury, even if that percentage met the sixty-percent threshold of *N.J.S.A.* 2A:15–5.3(a), best furthered the Legislature's equitable intent. *Ibid.*

In light of the Association's dismissal pursuant to *N.J.S.A.* 59:8–8, the same issue might arise at trial in this case. If the jury were to allocate sixty percent or more of the fault—but less than one hundred percent—to the Morey defendants, and the Morey defendants were required to pay one hundred percent of the damages under *N.J.S.A.* 2A:15–5.3(a), they would similarly be denied the benefit of their contribution claim. In the setting of this case, that result would defeat the Legislature's clear objective: to fairly apportion liability for damages in accordance with the factfinder's allocation of fault. *See N.J.S.A.* 2A:15–5.2(a), (d), –5.3(a), (c), (e); *N.J.S.A.* 2A:53A–2, –3.

Accordingly, if the Morey defendants present evidence at trial that the Association was negligent and that its negligence was a proximate cause of Abiah Jones's death, the jury should be instructed to determine whether the Morey defendants have met their burden of proof on those issues. The jury should be instructed that if it finds that the Morey defendants have proven that the Association was negligent and that the Association's negligence was a proximate cause of Abiah Jones's death, it may allocate a percentage of fault to the Association pursuant to *N.J.S.A.* 2A:15–

5.2. If the jury allocates a percentage of fault to the Association, the trial court shall mold the judgment to reduce the Morey defendants' liability to plaintiffs in accordance with the percentage of fault allocated to the Association. *N.J.S.A.* 2A:15-5.2(d). If the jury does not find that the Morey defendants have met their burden to prove that the Association's negligence was a proximate cause of the accident, it should not allocate fault to the Association. In that case, an award of damages to plaintiffs will not be affected.

We remind litigants and their counsel that any party—plaintiff or defendant—intending to pursue a claim against a public entity or employee subject to the Tort Claims Act must act expeditiously to preserve that claim. Such a party must serve a notice pursuant to the Act within ninety days of the accrual of the claim under *N.J.S.A.* 59:8-8, or file an application within one year of that date for leave to serve a late notice of claim, on a showing of "extraordinary circumstances," under *N.J.S.A.* 59:8-9. A plaintiff that is aware of a potential cause of action against a public entity—and litigates the case in a manner that deprives a defendant of an opportunity to serve a Tort Claims Act notice on that entity—risks a reduction in any damages award by virtue of an allocation of fault under the Comparative Negligence Act and the Joint Tortfeasors Contribution Law. A defendant that is aware of its potential cross-claim against a public entity that may be a joint tortfeasor—but foregoes its opportunity to serve a Tort Claims Act notice on that entity—may lose the benefit of an allocation of fault to the public entity in accordance with those statutes.

IV.

The trial court's summary judgment determination is reversed, and summary judgment is granted to the Association dismissing with prejudice the Morey defendants' third-party contribution and common-law indemnification claims. The matter is remanded to the trial court for further proceedings in accordance with this opinion.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, FERNANDEZ–VINA, SOLOMON and TIMPONE join in JUSTICE PATTERSON's opinion.

