**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-5708-17T2
                  A-0450-18T2

SAMUEL MEJIA, Individually
and as Administrator and Administrator
ad Prosequendum of the Estate of
TANIA MEJIA,

      Plaintiffs-Respondents,

v.

QUEST DIAGNOSTICS, INC.,
TERESITA LANIO, LINDA PHAM
SIMON B. SANTOS, M.D., and
SIMON B. SANTOS MEDICAL
GROUP, LLC,

      Defendants-Respondents.

_____

QUEST DIAGNOSTICS INC.,
TERESITA LANIO and LINDA
PHAM,

      Third-Party Plaintiffs,

v.

JACINTO FERNANDEZ, M.D.,

Third-Party Defendant-
Appellant,

and

SIMON B. SANTOS, M.D.,

Third-Party Defendant-
Respondent.

_____

SAMUEL MEJIA, Individually
and as Administrator and Administrator
ad Prosequendum of the Estate of
TANIA MEJIA,

Plaintiffs-Appellants,

v.

QUEST DIAGNOSTICS, INC.,
TERESITA LANIO, LINDA PHAM,
SIMON B. SANTOS, M.D., and
SIMON B. SANTOS MEDICAL
GROUP, LLC,

Defendants.

_____

QUEST DIAGNOSTICS INC.,
TERESITA LANIO, and LINDA
PHAM,

Third-Party Plaintiffs/
Respondents,

v.

JACINTO FERNANDEZ, M.D.,
and SIMON B. SANTOS, M.D.,

       Third-Party Defendants/
       Respondents.

_____

       Argued January 29, 2019 – Decided March 4, 2019

       Before Judges Hoffman and Firko.

       On appeal from an interlocutory order of Superior Court of New Jersey, Law Division, Essex County, Docket No. L-4240-14.

       William L. Brennan argued the cause for appellant Jacinto Fernandez, M.D. in A-5708-17 (The Law Office of William L. Brennan, attorneys; William L. Brennan, of counsel and on the briefs; John G. Kilbride, Mary Grace Callahan and Abbey True Harris, on the briefs).

       Brian E. Mahoney argued the cause for respondents Samuel Mejia, Individually and as Administrator and Administrator ad Prosequendum of the Estate of Tania Mejia in A-5708-17 (Blume, Forte, Fried, Zerres & Molinari, PC, attorneys; Carol L. Forte, of counsel; Brian E. Mahoney, on the brief).

       Michael T. Hensley argued the cause for respondents Quest Diagnostics Inc., Teresita Lanio and Linda Pham in A-5708-17 (Bressler Amery Ross, PC, attorneys; Michael T. Hensley, on the brief).

       William J. Buckley argued the cause for respondents Simon B. Santos, M.D., and Simon B. Santos Medical Group, LLC in A-5708-17 (Schenck, Price, Smith & King, LLP, attorneys; William J. Buckley and Terrence John Hull, on the brief).

3

Epstein Becker & Green, PC, attorneys for amicus curiae New Jersey Doctor-Patient Alliance in A-5708-17 (Anthony Argiropoulos and William Gibson, of counsel and on the brief).

Brian E. Mahoney argued the cause for appellants Samuel Mejia, Individually and as Administrator and Administrator ad Prosequendum of the Estate of Tania Mejia in A-0450-18 (Blume, Forte, Fried, Zerres & Molinari, PC, attorneys; Carol L. Forte, of counsel; Brian E. Mahoney, on the brief).

Michael T. Hensley argued the cause for respondents Quest Diagnostics Inc., Teresita Lanio and Linda Pham in A-0450-18 (Bressler Amery Ross, PC, attorneys; Michael T. Hensley and Jorkeell Echeverria, on the brief).

William J. Buckley argued the cause for respondents Simon B. Santos, M.D., and Simon B. Santos Medical Group, LLC in A-0450-18 (Schenck, Price, Smith & King, LLP, attorneys; William J. Buckley and Terrence John Hull, on the brief).

PER CURIAM

By leave granted in this medical malpractice action, we consider back to back interlocutory appeals, which we consolidate for purposes of this opinion. In the first appeal, Docket Number A-5708-17, third-party defendant Dr. Jacinto Fernandez seeks the reversal of a June 19, 2018 order denying his motion for dismissal. In the second appeal, Docket Number A-0450-18, plaintiff Samuel Mejia, individually and as administrator of the estate of his late wife, Tania

Mejia (decedent), seeks the reversal of a July 13, 2018 order denying his motion for reconsideration regarding an expert witness issue. Following our review of the record,[1] we affirm the order denying dismissal of the third-party complaint against Dr. Fernandez and we reverse the order denying plaintiff's motion for reconsideration.

## I.

Decedent visited defendant Dr. Simon Santos, a family practitioner, in May, June, and July of 2010, with complaints of kidney and stomach pain, headaches, vomiting, leg and toe numbness, insomnia, and dizziness. Dr. Santos sent decedent for CT scans, which revealed a potential mass in her uterus. The record contains no evidence that Dr. Santos reviewed the CT scan results with decedent nor did he send the results to decedent's gynecologist.

In December 2010 and December 2011, decedent underwent PAP smears, which the Quest defendants[2] interpreted as normal. In June 2012, Dr. Jacinto

---

[1] The failure of the parties to supply a joint appendix unnecessarily hampered our review of the record. We remind the parties that one of the "purposes of the court rules [is] to facilitate and expedite litigation . . . and parties are urged to join in the preparation of a joint appendix." Paolercio v. Wright, 1 N.J. 121, 123 (1948); R. 2:6-1.

[2] For ease of reference, we refer to defendant Quest Diagnostics, Inc., and its employees, defendants Teresita Laino and Linda Pham, as the Quest defendants.

Fernandez, decedent's long-time gynecologist, diagnosed her with cervical cancer; she died approximately six months later, at the age of thirty-nine. In addition to plaintiff, decedent was survived by a fifteen-year-old daughter.

In June 2014, plaintiff filed a complaint alleging the Quest defendants failed to detect decedent's cancer via the PAP smears. The Quest defendants filed a third-party complaint against Dr. Fernandez, seeking indemnification and contribution. The trial judge granted the Quest defendants' motion to declare they "are not required to serve an Affidavit of Merit with respect to their third[-]party claims sounding in contribution and indemnification against" Dr. Fernandez.

Even though the Quest defendants sued Dr. Fernandez, plaintiff did not move to add Dr. Fernandez as a direct defendant. In a certification, plaintiff's counsel explained, "[A]t the very outset of our involvement in this matter, we had a board certified Obstetrician/Gynecologist review the records relevant to a potential medical malpractice claim against" Dr. Fernandez, and that expert reported finding "no basis" to assert Dr. Fernandez "deviated from accepted standards of care." As a result, plaintiff's counsel concluded his firm was "duty-

bound to refrain from presenting a claim against" Dr. Fernandez, citing applicable rules and statutes.[3]

In March 2016, the trial court granted the Quest defendants' motion for leave to file a third-party complaint to add Dr. Santos as a third-party defendant. Drs. Fernandez and Santos sought indemnity and contribution from each other. The court then granted plaintiff leave to file an amended complaint to include direct claims against Dr. Santos and his medical group.

The trial court set a May 31, 2017 deadline for the parties to serve expert reports. Relevant to this appeal, plaintiff produced a report from Dr. Thomas Rutherford and Dr. Santos produced a report from Dr. Matthew Boente.

In January 2018, defense counsel took Dr. Rutherford's deposition. Approximately one month later, counsel for Dr. Santos announced the withdrawal of Dr. Boente, while at the same time serving a report from a new expert, Dr. Stephen Rubin, without leave of court. Counsel for Dr. Santos advised that Dr. Boente "is no longer able to serve as an expert in this matter due to a personal issue."

---

[3] Specifically, plaintiff's counsel cited, "[Rule of Professional Conduct] 3.1 (meritorious claims and contentions), Rule 1:4-8 (frivolous litigation, attorneys), N.J.S.A. 2A:15-59.1 (frivolous litigation, parties), and N.J.S.A. 2A:53A-41 ("The Patients First Act")."

Dr. Rubin's report contained dramatically different opinions than Dr. Boente's report. For example, Dr. Boente's report stated that decedent had no cancer in July 2010, at the time plaintiff alleges that Dr. Santos committed malpractice. In contrast, Dr. Rubin stated that decedent did have cancer in July 2010, but asserted she had limited treatment options.

Upon receipt of Dr. Rubin's report, plaintiff filed a motion to bar Dr. Rubin as an expert, noting that his report "was served on February 15, 2018, over five months after the deadlines for service of defense expert reports," and approximately ten weeks before the discovery end date. In addition to the late submission of Dr. Rubin's report, plaintiff's counsel explained why "the late service of this entirely new expert report significantly prejudices the plaintiff[:]

> 19. Dr. Rubin's report contains entirely new opinions not previously espoused by Dr. Boente. The experts differ on everything from the percentages of [decedent's] chances of survival at any given time to whether the plaintiff even had cancer in July 2010. Dr. Rubin also includes a new opinion regarding the plausibility of certain treatments due to [decedent's] religious beliefs.[4]
>
> . . . .
>
> 21. Dr. Rubin's new opinion concerning the availability of surgical treatments due to [decedent's] religious beliefs, if permitted, would require plaintiff's counsel

---

4 Plaintiff's decedent was a Jehovah's Witness.

to find and retain an entirely new expert on bloodless surgery to rebut this new claim."

Notwithstanding plaintiff's contentions, the trial court denied plaintiff's motion to bar Dr. Rubin, noting, "Counsel has sufficient time to depose [Dr. Rubin] and have their expert comment on the opinions of Dr. Rubin prior to the existing [d]iscovery [e]nd [d]ate of April 30, 2018."

In response to Dr. Rubin's report, on April 11, 2018, plaintiff served a report from a new expert, Dr. John P. Koulos. Defendants filed a motion to bar the report. On May 11, 2018, a different judge granted defendants' motion, apparently concluding that the judge who denied plaintiff's motion to bar Dr. Rubin had already addressed this issue since she printed on the order barring Dr. Koulos' report, "as per the court[']s March 16, 2018 order."[5] After the court denied plaintiff's motion for reconsideration, plaintiff sought leave for interlocutory review, which we granted.

In April 2018, Dr. Fernandez filed a motion seeking to have the court treat him "as the defendants were treated in Burt v. West Jersey Health Systems, 339 N.J. Super. 296 (App. Div. 2001) and Jones v. Morey's Pier, Inc., 230 N.J. 142 (2017)." Pursuant to those cases, Dr. Fernandez argued that plaintiff could not

---

[5] Of note, Dr. Koulos did not issue his report until April 10, 2018, over three weeks after the court's March 16, 2018 order.

recover from him indirectly or directly; as a result, he should not have to participate in the trial. According to this argument, while the jury could apportion liability to Dr. Fernandez, the verdict would not make him financially liable because plaintiff had not sued him directly – any liability apportioned to him would simply reduce the amount plaintiff could recover from the other defendants.

Plaintiff opposed the motion, distinguishing the case under review from Jones and Burt. The Quest defendants did not take any position on the motion. The trial court decided the motion on the papers, and entered an order denying Dr. Fernandez's motion. The order included the following reasoning: "Denied. [Third-party] defendants in Jones and Burt were dismissed meritoriously. There is no basis for dismissal of movant here." After the court denied the motion, Dr. Fernandez sought leave for interlocutory review, which we granted.

## II.

We first address Dr. Fernandez's appeal. He argues that because plaintiff did not include him as a defendant, he "should be treated as the defendants were treated in Burt and Jones," and dismissed from the case. Dr. Fernandez argues the court should allow the remaining parties to present evidence of his alleged negligence at trial, and if the jury apportions any fault to him, the court would

10

simply deduct that proportionate share from plaintiff's recovery. The argument advanced by Dr. Fernandez assumes that he faces no potential liability to the Quest defendants or Dr. Santos on their contribution claims for damages awarded to plaintiff. We reject this argument since circumstances remain where Dr. Fernandez could face financial responsibility on a contribution claim.

Burt concerned a medical malpractice case in which the plaintiff sued a hospital, an anesthesia practice, and employees of both entities. After the trial court dismissed the plaintiff's claim against the anesthesia practice because the plaintiff did not timely file an affidavit of merit against it, the plaintiff moved to bar the hospital from asserting third-party claims against the anesthesia practice. The trial court granted the motion, and the hospital appealed, arguing the court's order deprived it of its statutory right to contribution. We reversed, finding that the purposes of the Affidavit of Merit Statute, the Joint Tortfeasor Contribution Law, and the Comparative Negligence Act, were best served by dismissing the hospital's third-party contribution claims against the anesthesia practice and reducing the plaintiff's recovery against the hospital by the percentage of negligence allocated to the practice.

Jones involved the death of an eleven-year-old girl after she fell from an amusement park ride. 230 N.J. at 147. The injury occurred during a visit to the

park while on a school trip. Ibid. The girl's parents sued the park, but not the school, and the park failed to file the required notice of claim against the school as required under the Tort Claims Act. Id. at 147-48. The park did eventually name the school as a third-party defendant. Id. at 148. Our Supreme Court determined that because the park did not file a timely Tort Claims Act notice, the school could not be liable for indemnity or contribution. Id. at 148-49. Thus, the court had to dismiss the claim against the school. Nonetheless, the court held that the park could offer evidence of the school's negligence at trial, which would reduce the damages awarded to plaintiffs by the percentage of fault allocated to the school. Id. at 149.

We find Burt and Jones distinguishable from the case under review. Those cases concerned third-party defendants previously dismissed on the merits. As explained by the motion judge here, Dr. Fernandez remains an active party, not a third-party defendant dismissed on the merits. Further, neither Burt nor Jones addressed whether the third-party defendant involved in those cases needed to attend trial because the court previously dismissed the claims against them.

We also reject the fundamental premise of the argument advanced by Dr. Fernandez, that "he cannot be financially responsible for damages awarded to . . . plaintiff, either directly or through contribution." The Comparative

Negligence Act provides that a plaintiff is entitled to collect the full amount of the damages awarded from any party that the factfinder determines to be sixty percent or more responsible for the total damages. N.J.S.A. 2A:15-5.3(a). In a different subsection of the same statute, the Act affords to a defendant "compelled to pay more than his percentage share" of the damages a contribution claim against joint tortfeasors. N.J.S.A. 2A:15-5.3(e). The Joint Tortfeasors Contribution Law, N.J.S.A. 2A:53A-3, defines that contribution claim. Considered together, the three provisions envision an equitable outcome: if the plaintiff collects the full amount of damages from a defendant adjudged 60 percent or more, but less than 100 percent at fault, that defendant may assert a contribution claim against a joint tortfeasor for any damages in excess of its allocated share. N.J.S.A. 2A:15-5.3(a), 5.3(e); N.J.S.A. 2A:53A-3. With the benefit of its contribution claim against joint tortfeasors, the defendant will ordinarily pay a percentage of damages that is consonant with the factfinder's allocation of fault. Ibid.

We are satisfied that the Quest defendants and Dr. Santos were entitled to implead Dr. Fernandez and prove his responsibility as a joint tortfeasor so as to limit any allocation of its own fault for plaintiff's damages, and thereby limit any award against it. The Quest defendants and Dr. Santos may assert this claim

even though plaintiff, having declined to name Dr. Fernandez as a direct defendant, is not "in a position to recover damages from the defendant at issue." Town of Kearny v. Brandt, 214 N.J. 76, 103 (2013). Of course, the Quest defendants and Dr. Santos bear the burden of proof on their third-party contribution claims. Miraglia v. Miraglia, 106 N.J. Super. 266, 270 (App. Div. 1969).

Here, we discern no reason to excuse Dr. Fernandez from attending trial. He may participate at trial, and the jury can apportion fault in compliance with the mandates of Jones and Burt. If the jury should adjudge either the Quest defendants or Dr. Santos to be sixty percent or more at fault, and also adjudge a percentage of fault against Dr. Fernandez, then in that circumstance, Dr. Fernandez would be financially responsible for damages on the contribution claim of the co-defendant adjudged sixty percent or more at fault.

Even if we were to accept the premise of Dr. Fernandez that he cannot be financially responsible for damages awarded to plaintiff on a contribution claim, we conclude it would unfairly prejudice plaintiff, this late in the proceedings, to require plaintiff to present a defense of Dr. Fernandez. At the point Dr. Fernandez filed his motion to excuse him from participation in the trial, the case was nearly four years old, after the entry of nine case management orders and

14

the expiration of expert witness deadlines. We also note that Dr. Fernandez previously retained an expert on his own behalf – Dr. William Ainslie – and served a report from him. Thus, we affirm the trial court's order denying Dr. Fernandez treatment pursuant to Jones and Burt.

## III.

Next, we turn to plaintiff's appeal of the trial court's discovery order denying his motion for reconsideration of an order barring plaintiff's new expert report. A motion for reconsideration is committed to the sound discretion of the court, which should be "exercised in the interest of justice." Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)). Reconsideration is appropriate when a court has rendered a decision "based upon a palpably incorrect or irrational basis," or failed to consider or "appreciate the significance of probative, competent evidence." Ibid. (quoting D'Atria, 242 N.J. Super. at 401). We review the denial of a motion for reconsideration to determine whether the court abused its discretionary authority. Id. at 389.

On appeal, plaintiff argues that the court's rulings, barring plaintiff's rebuttal expert and report, will allow the dramatically different opinions of a substituted expert, Dr. Rubin, to stand unrebutted. These rulings, plaintiff

asserts, have "the capacity to produce an unjust result at the time of trial." We agree.

We note that Dr. Rubin's report contained new opinions that plaintiff's initial expert did not previously address, plaintiff complied with all previous discovery deadlines, and defendants would suffer no unfair prejudice if the court permits plaintiff to proceed with Dr. Koulos as an expert.

Medical malpractice claims often come down to a "pitched battle of experts," where any artificial advantage may "tip the scales" such as to affect the ultimate outcome. Day v. Lorenc, 296 N.J. Super. 262, 269 (App. Div. 1996). Here, the court permitted Dr. Santos to withdraw his expert very late in the case, after offering only vague "personal reasons" as an excuse. Defendant then served the report of a new expert, whose opinions differed dramatically from those of defendant's previous expert. By prohibiting plaintiff the opportunity to serve a new expert report, the court deprived plaintiff not only of the same opportunity granted to Dr. Santos, but also deprived plaintiff of the opportunity to meaningfully respond to the new, dramatically different opinions contained in Dr. Rubin's report. This granted Dr. Santos an unfair advantage.

In denying the motion for reconsideration, the trial court misread the original order denying plaintiff's motion to bar Dr. Rubin's report:

> [T]he language of the [c]ourt's March 16, 2018 [o]rder
> is . . . exceedingly clear. The [c]ourt permitted the
> report of Dr. Rubin, with the stipulation that Plaintiff
> would be able to "have their expert comment on the
> opinions of Dr. Rubin." The court's additional language
> references expert in the present tense, and does not
> provide an avenue by which Plaintiff would be able to
> retain a new expert to rebut Dr. Rubin, while also
> collaterally rehabilitating portions of the testimony of
> their original expert, Dr. Rutherford. At the time of the
> [c]ourt's March 16, 2018 Order, Dr. Rutherford was the
> expert retained by Plaintiff. It therefore stands to
> reason, considering the use of "expert" in the present
> tense, that Dr. Rutherford would be permitted to opine
> as to Dr. Rubin's report.

At the time the previous judge entered the March 16 order, plaintiff had not obtained a report from Dr. Koulos. It was therefore error to interpret the March 16 order as precluding a report that did not yet exist or to deny an application that had not yet been made. The provision of the March 16 order that plaintiff shall "have their expert comment on the opinions of Dr. Rubin" did not bar plaintiff from responding to Dr. Rubin with a new expert but simply permitted plaintiff to obtain a supplemental report from Dr. Rutherford, if plaintiff chose to do so.

As Judge Fuentes explained in Thabo v. Z Transportation, 452 N.J. Super. 359, 371 (App. Div. 2017),

> The best way to foster public confidence in our civil
> courts is to decide cases on their merits. Discovery rules

are intended to create a level playing field for all litigants and promote the resolution of civil dispute on the merits. Judges are entrusted to ensure that these rules are properly and fairly enforced.

Because the denial of plaintiff's motion for reconsideration constituted a mistaken exercise of discretion, allowing an unlevel playing field to continue, we reverse the order denying reconsideration and remand for the entry of an order permitting plaintiff to substitute Dr. Koulos for Dr. Rutherford. On remand, the trial court shall reopen discovery for thirty-five days, if requested by defendants, to permit defendants to depose Dr. Koulos.

Affirmed, in part, and reversed and remanded, in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18

A-5708-17T2