**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5028-17T2

MICHAEL FROMOSKY,

    Plaintiff-Respondent,

v.

TOWNSHIP OF LITTLE EGG
HARBOR, EUGENE KOBRYN,
and DAVE SCHLICK,

    Defendants,

and

RICHARD BUZBY and
GARRETT LOESCH,

      Defendants/Third-Party
      Plaintiffs-Appellants,

v.

LITTLE EGG HARBOR TOWNSHIP,
MICHAEL FROMOSKY, JOHN KEHM,
and RAYMOND GORMLEY,

      Third-Party Defendants-Respondents.

Argued September 17, 2019 – Decided November 14, 2019

Before Judges Fisher and Gilson.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-0723-17.

John J. Novak argued the cause for appellants (John J. Novak, attorney; John J. Novak and Deborah A. Plaia, on the briefs).

Jennifer M. Carlson argued the cause for respondent Michael Fromosky (Richard M. Pescatore, PC, attorneys; Jennifer M. Carlson, on the brief).

Erin Thompson argued the cause for respondents Little Egg Harbor Township, John Kehm, and Raymond Gormley (Birchmeier & Powell LLC, attorneys; James Robert Birchmeier, on the brief).

PER CURIAM

This appeal arises out of a series of complaints made by employees of the Township of Little Egg Harbor (Township). The named plaintiff, Michael Fromosky, is the Township's Code Enforcement Officer. Ultimately, he settled his claims. As a consequence, the claims at issue on this appeal are counterclaims and third-party claims filed by Richard Buzby and Garrett Loesch.

Buzby is the Township Chief of Police and Loesch was the Township Business Administrator and Chief Financial Officer. They asserted claims

against Fromosky, the Township, John Kehm, and Raymond Gormley. The latter two individuals are members of the Township committee. Buzby and Loesch appeal from five orders entered on February 2, 2018, and March 29, 2018. Those orders (1) granted summary judgment to Fromosky; (2) denied reconsideration of that summary judgment order; (3) dismissed the third-party complaint as to all third-party defendants for failure to state a claim; (4) denied Buzby and Loesch's motion for leave to file an amended third-party complaint against Fromosky; and (5) denied Buzby and Loesch's motion for leave to amend the third-party complaint against all third-party defendants. Having reviewed the arguments of the parties in light of the record and law, we affirm.

I.

We take the facts from the record developed on the motions and view them in a light most favorable to Buzby and Loesch, the non-moving parties. Loesch and Buzby alleged that they were retaliated against by Fromosky, Gormley, and Kehm as a result of reporting alleged wrongful conduct engaged in by Kehm. The initial report of the wrongful conduct occurred in 2014, when Loesch reported that conduct to Buzby. Buzby, in turn, sent a letter to the Ocean County Prosecutor's Office. Buzby and Loesch then alleged that they were subjected to retaliatory acts, which occurred between September 2015 and September 2016.

A-5028-17T2

They also contend that during that same period of time they were slandered. Accordingly, we will summarize the relevant letters sent by, and communications made by, Buzby and Loesch between March 2015 and September 2016, as well as the alleged resulting retaliation and slander.

The initial report of alleged misconduct was made by Buzby in a letter he sent to the Ocean County Prosecutor, dated March 10, 2015. Buzby asserted that Kehm was retaliating against him and causing "an adverse effect on [the Township's] police operations." Buzby reported that in May 2014, Loesch had advised him that "he believed Kehm may have been improperly collecting FEMA rental assistance while remaining in the same home he claimed to be displaced from." Buzby explained he was unable to investigate Loesch's claim against Kehm because Kehm was Buzby's "appropriate authority." Accordingly, to address Loesch's concern, Buzby contacted his "other appropriate authority," Committeeman Gormley, who confronted Kehm. Buzby went on to report that Kehm had denied any wrongdoing when confronted by Gormley.

Buzby informed the prosecutor that Loesch had also reported that "Kehm had applied for, and received, a property tax abatement on his damaged home." Buzby explained that, according to Loesch, "Kehm . . . received a 90% tax reduction on the value of his damaged home[,]" which he was not entitled to

under the law. Buzby noted that he believed Kehm was aware that Loesch had reported the improper property tax abatement.

Buzby then wrote that "[s]ince these facts have become known to Kehm, every request for anything I have made ha[s] been greeted by scorn and ridicule by Kehm and, to a lesser extent, Gormley." Buzby concluded his letter by stating that he was seeking protection under the whistleblower act and he requested that Kehm be removed "as an appropriate authority for the police department . . . ." A copy of Buzby's letter was sent to the Township's Mayor and Counsel.

About one week later, Loesch sent an email to the Mayor requesting protection from retaliation and insisting that "you as the Mayor must . . . act to protect your staff and prevent possible litigation against the [T]ownship." A few hours later, the Mayor sent a response and explained he had contacted legal counsel for assistance.

On March 23, 2015, Township Counsel sent a letter to Loesch addressing his earlier email. Counsel requested that Loesch "advise as to any adverse employment actions . . . suffered since the disclosure so that the Township may address any issue immediately." Counsel also requested that Loesch describe the "form of protection [he was] requesting and the nature of the

threats/harassment [he had] experienced." Counsel then advised Loesch to call the police if he felt threatened. Counsel also advised that Loesch's complaints had been forwarded to the Ocean County Prosecutor's Office.

A few weeks later, Loesch sent another email to Township Counsel, requesting advice concerning his ability as Township Business Administrator "to set the duties and expectations for the code enforcement [officer] . . . position." In that email, Loesch stated, "everything has calmed down with respect to the other [Kehm]/[Gormley] issues." Nonetheless, he stated that he suspected Fromosky, as a Code Enforcement Officer, would likely attempt to "defend[] himself from retaliation by me" and, thus, Loesch feared his actions would be examined "through a magnifying glass." He explained he was concerned about future conflicts between himself, Fromosky, Gormley, and Kehm, but stated that he was "not looking [to] do anything at all, no actions or anything." Instead, he explained he was only seeking advice regarding how to proceed if something should happen in the future.

Township Counsel responded that day, advising Loesch that, as the Township Business Administrator, he was tasked with supervising Fromosky and had "the authority to discipline" him if he refused to perform his assigned duties.

6

Several months later, in early-August 2015, Buzby again contacted the Ocean County Prosecutor and copied the Mayor and Loesch on that communication. He explained he was writing to provide additional information concerning "possible retaliation" against himself and a third Township employee for reporting Kehm's "possible misconduct." Buzby stated he had been informed that "'they' had somehow gotten the letter of referral and now were 'quote, looking to get even.'" In making that claim, Buzby did not state who "they" were.

Buzby also reported an incident that had occurred that past weekend between Fromosky and William Allen, another Township employee (the Allen-Fromosky incident). According to Buzby, Allen and Fromosky were attending a wedding reception when Fromosky approached Allen and claimed that Buzby "had, 'thrown him (Bill Allen) under the bus' by including information from him in [the] letter to [the prosecutor] about John Kehm." Fromosky then informed Allen that he was a former state trooper who "had many contacts in [the Ocean County Prosecutor's Office], one of whom allegedly provided the letter" in which Buzby had reported Kehm's misconduct.

Buzby informed the prosecutor that he found the Allen-Fromosky incident troubling for two reasons. First, he believed it was inappropriate for Fromosky

7

to know that Buzby had reported Kehm for potential misconduct since Kehm had "fought so hard" to safeguard Fromosky's employment with the Township. Second, he maintained the incident showed that Fromosky had threatened a Township employee whom he incorrectly believed was involved in reporting Kehm's misconduct. Accordingly, Buzby feared Fromosky's "threats" would "get[] even worse."

After Buzby reported the Allen-Fromosky incident, Allen, himself, submitted a complaint and letter to the Township, which detailed the incident. In response, the Township had outside counsel, Robert Greitz, investigate the incident. As part of his investigation, Greitz interviewed several Township employees, including Allen, Fromosky, and Buzby. Greitz prepared a final report, dated September 20, 2015, in which he concluded, "the facts in this situation do not demonstrate Fromosky took any retaliatory action against Allen. Further, there is no evidence to support the assertion [that] Fromosky violated the Township's Harassment policy."

During the Allen-Fromosky investigation, Buzby made a complaint directly to Greitz, alleging that Fromosky had lied about Buzby during his interview with Greitz. Thereafter, on December 28, 2015, Buzby sent an email to the Mayor and Loesch, stating the Township had never addressed his charge

against Fromosky for lying. He also wrote that Kehm and Fromosky were engaged in a conspiracy "that involve[d] Fromosky reporting [Buzby] falsely to the attorney general[,]" and that Kehm was "solicit[ing] and receiv[ing] advice from Fromosky on how to fire . . . Loesch, apparently for nothing more than having reported Kehm to [the Mayor], the [T]ownship attorney and, ultimately, the county prosecutor through [Buzby]." Buzby further alleged that Fromosky had committed these retaliatory acts "at work, on his [T]ownship email and on a [T]ownship computer."

In addition to emailing the Mayor, Buzby sent another letter to the Ocean County Prosecutor. He wrote that "[s]ince the Allen matter and the issuance of the [Greitz] report, an uninterrupted string of harassment and interference has continued." He informed the prosecutor that Kehm had shared confidential information in the workplace and Fromosky had filed a meritless complaint "against Loesch and [Buzby] claiming that [Buzby] had used Allen as a proxy and Loesch had helped." Buzby went on to explain that he had recently learned Fromosky had filed a complaint with the Attorney General's Office, which contained false statements about Buzby. He then alleged that Fromosky submitted those false statements "to help . . . Kehm."

9

Buzby explained he had learned the information he was reporting from Loesch, who had located three emails between Kehm and Fromosky. According to Buzby, the first email was from Fromosky to Kehm, with a subject line reading "done," that contained a draft of Fromosky's complaint to the Attorney General's Office. Buzby alleged that in the second email, Fromosky was "using a former relationship with a governor's aide to attempt to influence the [Attorney General] to investigate" his September 2015 complaint. Lastly, Buzby contended the third email contained information from Fromosky to Kehm regarding "how to fire" Loesch. Buzby ended his letter to the prosecutor similarly to his email to the mayor, by asserting that Fromosky had sent the three emails while "at work, during work hours and . . . on a [T]ownship computer." To support those claims, Buzby attached a copy of the email allegedly sent by Fromosky to Kehm that addressed how to remove Loesch from his Township position.

In September 2015, Buzby submitted a voucher to the Township Committee seeking reimbursement for cell phone expenses. The committee approved that request and a check was issued the following day. Shortly thereafter, Gormley contacted Township Counsel and arranged for an off-agenda resolution, at which he requested the appointment of a special investigator to

investigate Buzby's cell phone reimbursement. Township Counsel was conflicted from conducting the investigation, thus, in December 2015, the Township Committee appointed conflict counsel to conduct the investigation.

In June 2016, conflict counsel issued a report on the investigation into Buzby's request for cell phone expense reimbursement. According to the certifications submitted by Buzby and Loesch, that report concluded that Buzby had not violated any rule or law or otherwise acted wrongfully. One month later, in letters dated August 2, 2016, the Township notified Buzby and Loesch that their employment would be discussed in an executive session on August 11, 2016. Specifically, the letters advised that "the governing body will discuss the report and recommendations" of conflict counsel and advised that Buzby's and Loesch's "employment rights may be adversely affected."

According to Township Committee meeting notes, conflict counsel presented the findings of his report on September 8, 2016. Thereafter, the committee members voted to dismiss the cases against Loesch and Buzby. Three committee members abstained from voting on the motion to dismiss, including Gormley and Kehm.

On March 11, 2016, Tracey Habich, a Township employee, submitted a complaint to the Township alleging that on March 10, 2016, she was speaking

11

with a coworker when Fromosky joined their conversation and stated that another Township employee "was hired under the dispatch budget but is not in dispatch because she is 'under the Chief's desk.'" In her complaint, Habich explained she was reporting Fromosky's statement as "slanderous talk" about Buzby and the other employee.

A few days later, Buzby sent an email to the Ocean County Prosecutor, attaching a copy of the complaint made by Habich, denying Fromosky's allegations, and requesting that the prosecutor's office conduct an internal investigation into the matter. Buzby also reported that both Kehm and Fromosky had been observed slowly driving by his property, presumably looking for potential zoning violations. Buzby went on to claim that Fromosky had repeatedly abused him by (1) filing "a completely false complaint" with the Attorney General's Office, (2) accusing him of mishandling an incident in 2012, (3) falsely informing Allen that Buzby had cited him for information in the letter reporting Kehm's potential misconduct, and (4) informing "several members of [the police] department that [Buzby] was, in effect, incompetent and would be fired."

The Township conducted an investigation and held a hearing on Fromosky's comment to Habich. In a report dated December 28, 2016, the

12

hearing officer found there was no evidence establishing "Fromosky's alleged statement was intended to be sexual in nature or meant to be sexual harassment or general harassment . . . as defined in the [Township] Employee Handbook." As such, the hearing officer found Fromosky "not guilty" on a number of disciplinary charges filed against him. Nonetheless, the hearing officer determined Fromosky had violated the Township's Employee Handbook Code of Conduct by engaging in conduct unbecoming a public employee based on his admission that he had referred to Buzby as a "Pumpkinhead" and had previously "engag[ed] in conversation or jokes of a sexual nature to others" while working for the Township.

On September 13, 2016, Buzby contacted the police to report that Kehm was harassing him. Specifically, he informed the investigating detective that a friend had received a text message from an unknown number with a link to a webpage hosting a petition titled "Resignation of Chief Richard Buzby." He then reported that the telephone number that had sent the text message belonged to Kehm. Buzby also reported that he believed Kehm had sent the text message to harass and intimidate him for his role in investigating the claim that Kehm had unlawfully received a ninety-percent property tax reduction.

13

While Buzby and Loesch were making complaints against Fromosky, Fromosky was making his own complaints against Buzby and Loesch. For example, in September 2015, Fromosky sent a tip to the New Jersey Attorney General's Office alleging that Buzby had committed "[o]fficial [m]isconduct" and requesting he be investigated. That same month, Fromosky submitted a grievance to the Township, detailing several alleged violations of Township policies committed by Loesch. A year later, on September 1, 2016, Fromosky submitted a complaint to the Township, alleging Buzby and Loesch had repeatedly conspired and released false information about him to intimidate and threaten him.

The claims being made by Buzby, Loesch, and Fromosky eventually lead to formal litigation in 2017. On March 8, 2017, Fromosky filed suit against the Township, Buzby, Loesch, the former Township Mayor, and one other Township official. In his complaint Fromosky alleged violations of the Conscientious Employee Protection Act (CEPA) and the New Jersey Civil Rights Act (NJCRA).

On May 31, 2017, Buzby filed an answer, counterclaims, and a third-party complaint. Two days later, Loesch also filed an answer, counterclaims, and a third-party complaint. Buzby's and Loesch's counterclaims and third-party

complaints were nearly identical. In their counterclaims, they both alleged two counts against Fromosky: (1) slander, defamation, and libel per se; and (2) malicious abuse of process. In their third-party complaints, they both named the Township, Fromosky, Kehm, and Gormley as third-party defendants and alleged negligence against the Township; gross negligence against Gormley; civil conspiracy and unlawful retaliation under CEPA against Kehm and Fromosky; and violations of the NJCRA against Kehm, Fromosky, Gormley, and the Township. Buzby also alleged malicious abuse of process against Kehm and Gormley.

On October 12, 2017, before discovery was complete, Fromosky filed a motion for summary judgment to dismiss Buzby's and Loesch's counterclaims and third-party complaints. Approximately two weeks later, the Township, Gormley, and Kehm filed a motion to dismiss the third-party complaints for failure to state a claim pursuant to Rule 4:6-2(e).

On February 2, 2018, after hearing argument from counsel, the trial court orally granted summary judgment to Fromosky, placing its reasons for that decision on the record. Later that day, the court entered a written order memorializing its decision and dismissing with prejudice the counterclaims and third-party claims filed against Fromosky. The court reasoned that further

discovery would not serve to substantiate any of Buzby's or Loesch's counterclaims or third-party claims, that the tort claims were barred because no tort claim notice had been timely filed, that there was no proof of publication to a third party to sustain the slander and libel claims, that the abuse of process claims could not be substantiated because there was a lack of illegitimacy and coercion, that the statute of limitations barred all but one of the CEPA claims, and that there was insufficient evidence to rule in favor of Loesch and Buzby on the CEPA claims.

Buzby and Loesch moved for reconsideration of that summary judgment decision and filed two motions seeking leave to amend their third-party complaint and to file an amended third-party complaint as to Fromosky. On March 29, 2018, the court heard oral argument and decided four motions. First, the court granted Gormley, Kehm, and the Township's motion to dismiss the third-party complaints for failure to state a cause of action. Second, the court denied Buzby and Loesch's motion to amend their third-party complaints as to all third-party defendants. Third, the court denied Buzby and Loesch's motion to amend their third-party complaints as to Fromosky. Fourth, the court denied the motion for reconsideration of the order granting Fromosky summary

judgment. The court then entered four corresponding orders memorializing those decisions.

Thereafter, on June 26, 2018, a stipulation of dismissal was entered by Fromosky, the Township, Loesch, Buzby, Kobryn, and Dave Schlick, dismissing with prejudice Fromosky's claims and noting those claims had been "amicably adjusted by and between the parties . . . ."

Buzby and Loesch then filed a notice of appeal challenging the February 2, 2018 summary judgment order, and the four orders entered on March 29, 2018.

II.

On appeal, Buzby and Loesch make six arguments contending that the trial court erred by (1) not giving them favorable inferences when it granted summary judgment to Fromosky; (2) granting summary judgment to Fromosky; (3) granting the third-party defendants' motion to dismiss for failure to state a cause of action; (4) denying their motion for reconsideration; (5) denying their motion for leave to amend the third-party complaints; and (6) denying their request to equitably estop the third-party defendants from asserting the notice of tort claim as a defense. Having considered these arguments, we discern no error warranting a reversal of any of the five orders being appealed.

A-5028-17T2

We will analyze Buzby and Loesch's arguments by looking at the three specific types of claims they asserted; those are tort claims, claims under the NJCRA, and claims under CEPA. Accordingly, we will examine each of those three types of claims and also analyze whether the trial court erred in denying the motions to amend those claims.

A.     The Tort Claims

Loesch and Buzby made various tort claims against the Township, Fromosky, Kehm, and Gormley. Specifically, they asserted claims of slander, defamation, libel per se, negligence, gross negligence, civil conspiracy, and malicious abuse of process. The trial court dimissed those claims finding that no tort claim notice had been timely filed.

A trial court's interpretation and application of the Tort Claims Act (TCA) is a legal determination that we review de novo. See Jones v. Morey's Pier, Inc., 230 N.J. 142, 153 (2017); Parsons v. Mullica Twp. Bd. of Educ., 440 N.J. Super. 79, 83 (App. Div. 2015) ("'Our review of the meaning of a statute is de novo, and we owe no deference to the interpretative conclusions reached by the trial court . . . .'" (quoting Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 564 (2012))).

The TCA "is the statutory mechanism through which our Legislature effected a waiver of sovereign immunity." D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 133 (2013). As such, the TCA enumerates limited circumstances when a plaintiff may bring tort claims against public entities and public employees. Id. at 133-34. The "'guiding principle'" of the TCA is that "'immunity from tort liability is the general rule and liability is the exception.'" Jones, 230 N.J. at 154 (quoting D.D., 213 N.J. at 134).

The TCA "establishes the procedures by which claims may be brought . . . ." Beauchamp v. Amedio, 164 N.J. 111, 116 (2000). One of the procedures the TCA imposes is a requirement to timely file a notice of claim. Jones, 230 N.J. at 154, 157-58 (explaining the TCA's notice requirements apply to a plaintiff's claim, a defendant's cross-claim, and a third-party claim against a public entity); see also N.J.S.A. 59:8-1 to -11. The notice of claim must comply with a number of requirements, including (1) when it has to be filed, N.J.S.A. 59:8-8; (2) what information it must contain, N.J.S.A. 59:8-4; and (3) where it has to be filed, N.J.S.A. 59:8-7. The TCA's notice requirements are to be strictly construed. See McDade v. Siazon, 208 N.J. 463, 474, 476 (2011).

The Township is a municipal corporation located in Ocean County that qualifies as a "public entity" under the TCA's definition. See N.J.S.A. 59:1-3

(defining "public entity" to include "any county, municipality, district . . . and any other political subdivision or public body in the State"). Moreover, the TCA and its notice requirements apply to public employees and officials in both non-intentional and intentional tort actions. Velez v. City of Jersey City, 180 N.J. 284, 292-93 (2004) (citing Bonitsis v. N.J. Inst. of Tech., 363 N.J. Super. 505, 519-21 (App. Div. 2003)); Ptaszynski v. Uwaneme, 371 N.J. Super. 333, 344 (App. Div. 2004). Nonetheless, "there must be some nexus between the wrong that is complained of and the defendant's public employment in order to mandate that a notice of claim be filed before suit may be instituted." Gazzillo v. Grieb, 398 N.J. Super. 259, 264 (App. Div. 2008).

A review of Buzby's and Loech's counterclaims and third-party complaints reveals that the alleged tortious conduct in this case is inseparable from the individual defendants' public employment or actions. As such, the TCA applies and Buzby and Loesch were required to file a notice of claim before pursuing tort claims against the Township or its employees. See N.J.S.A. 59:8-3. Neither Buzby nor Loesch ever filed a notice of claim. Accordingly, the motion court correctly dismissed the tort claims.

Similarly, the court did not abuse its discretion in denying Buzby and Loesch's motions to amend their third-party complaints to include additional tort

claims because adding those claims would be futile. "'Rule 4:9-1 requires that motions for leave to amend be granted liberally . . . .'" Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 501 (2006) (quoting Kernan v. One Washington Park Urban Renewal Assocs., 154 N.J. 437, 456-57 (1998)). A court's decision on a motion to file an amended complaint "'always rests in the court's sound discretion.'" Ibid. "That exercise of discretion requires a two-step process: whether the non-moving party will be prejudiced, and whether granting the amendment would nonetheless be futile." Ibid. "An abuse of discretion occurs when a decision was 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Wear v. Selective Ins. Co., 455 N.J. Super. 440, 459 (App. Div. 2018) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

Here, allowing Buzby and Loesch to include additional tort claims would be futile as those claims would be dismissed based on the failure to file a notice of tort claim. Furthermore, the court did not abuse its discretion in denying Buzby and Loesch's motions to amend their third-party complaints to include claims of unprofessional conduct in violation of N.J.S.A. 2A:47A-1. That statutory cause of action is also subject to the TCA's requirements, including the

notice provisions. See Thigpen v. City of E. Orange, 408 N.J. Super. 331, 343-44 (App. Div. 2009).

Buzby and Loesch argue that the Township and its employees should be "equitably estopped" from asserting the lack of a notice as a defense, contending "the Township was clearly placed on notice." The doctrine of equitable estoppel "is designed to prevent injustice by not permitting a party to repudiate a course of action on which another party has relied to his detriment." Knorr v. Smeal, 178 N.J. 169, 178 (2003) (citing Mattia v. N. Ins. Co. of N.Y., 35 N.J. Super. 503, 510 (App. Div. 1955)). "To establish equitable estoppel, parties must prove that an opposing party 'engaged in conduct, either intentionally or under circumstances that induced reliance, and that [they] acted or changed their position to their detriment.'" Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 189 (2013) (alteration in original) (quoting Knorr, 178 N.J. at 178). "The doctrine is 'rarely invoked against a governmental entity . . . . Nonetheless equitable considerations are relevant to assessing governmental conduct, and may be invoked to prevent manifest injustice.'" McDade, 208 N.J. at 480 (quoting Cty. of Morris v. Fauver, 153 N.J. 80, 104 (1998)).

Buzby and Loesch have not demonstrated detrimental reliance based on the Township's or its employees' acts or omissions. There is no evidence that

the Township or its employees made any representations or engaged in any conduct suggesting they were waiving the defense of failure to file a notice of tort claim. See, e.g., McDade, 208 N.J. at 480-81. Instead, in Fromosky's July 24, 2017 answers to the counterclaims and third-party complaints, he asserted as a defense that "[t]he third party complaint and counterclaim is barred by virtue of the notice provisions and damage provisions of the New Jersey Tort Claims Act."

B. The NJCRA Claims

In 2004, the Legislature adopted the NJCRA "'for the broad purpose of assuring a state law cause of action for violations of state and federal constitutional rights[,] and to fill any gaps in state statutory anti-discrimination protection.'" Ramos v. Flowers, 429 N.J. Super. 13, 21 (App. Div. 2012) (quoting Owens v. Feigin, 194 N.J. 607, 611 (2008)). The NJCRA is modeled after the federal Civil Rights Act (CRA), 42 U.S.C. § 1983, and provides in relevant part:

> Any person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by

23

threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

[N.J.S.A. 10:6-2(c).]

See also Filgueiras v. Newark Pub. Sch., 426 N.J. Super. 449, 468 (App. Div. 2012). Accordingly, the NJCRA "is a means of vindicating substantive rights and is not a source of rights itself." Gormley v. Wood-El, 218 N.J. 72, 98 (2014).

"The elements of a substantive due process claim under the [NJCRA] are the same as those [for a federal CRA claim] under § 1983." Filgueiras, 426 N.J. Super. at 468 (citing Rezem Family Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 115 (App. Div. 2011)). Namely, a party must first "'identify the state actor, the person acting under color of law, that has caused the alleged deprivation.'" Ibid. (internal quotations omitted) (quoting Rivkin v. Dover Twp. Rent Leveling Bd., 143 N.J. 352, 363 (1996)). Next, the party needs to "'identify a right, privilege or immunity secured to the'" party by the constitutions of the state and federal governments or by state and federal laws. Ibid. (internal quotations omitted) (quoting 42 U.S.C. § 1983). Thus, to establish a cause of action under either act, the second element requires a party to "allege a specific constitutional violation." Matthews v. N.J. Inst. of Tech, 717 F. Supp. 2d 447, 452 (D.N.J. 2010) (citing N.J.S.A. 10:6-2(c)).

Buzby's and Loesch's original third-party complaints failed to identify any federal or state constitutional "rights, privileges, or immunities" that had been impacted. Instead, they presented their NJCRA claims in general terms, by claiming they were denied due process and equal protection under New Jersey law. Moreover, in their appellate brief, they address the NJCRA claims only as they apply to Fromosky and they continue to omit an allegation of a specific violation. Without alleging a specific right that has been infringed, Buzby and Loesch cannot bring a civil action under the NJCRA. Accordingly, the motion court did not err in dismissing the NJCRA claims. See Ibid.

Moreover, the trial court did not abuse its discretion in denying the motions to amend the third-party complaints to include claims under the federal CRA and to "more precisely articulate" the NJCRA claims. In the proposed amended third-party complaint, neither the federal CRA claims nor the amended NJCRA claims alleged a specific constitutional violation. As such, the amended third-party complaint did not properly articulate a cause of action under the NJCRA or the federal CRA. See Ibid. Thus, the amendment would be futile.

C. The CEPA Claims

CEPA is remedial legislation designed "'to protect and encourage employees to report illegal or unethical workplace activities and to discourage

public and private sector employers from engaging in such conduct.'" Sauter v. Colts Neck Volunteer Fire Co. No. 2, 451 N.J. Super. 581, 588 (App. Div. 2017) (quoting Mehlman v. Mobil Oil Corp., 153 N.J. 163, 179 (1998)). Accordingly, the statute "shields an employee who objects to, or reports, employer conduct that the employee reasonably believes to contravene the legal and ethical standards that govern the employer's activities." Hitesman v. Bridgeway, Inc., 218 N.J. 8, 27 (2014); see also N.J.S.A. 34:19-3(a), (c).

The statute prohibits an employer from retaliating "against an employee who discloses, threatens to disclose, or refuses to participate in an activity of the employer 'that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law.'" Sauter, 451 N.J. Super. at 587 (quoting N.J.S.A. 34:19-2 to -3). A plaintiff alleging unlawful retaliation under CEPA must establish that

> (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy;
>
> (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3(c);
>
> (3) an adverse employment action was taken against him or her; and

(4) a causal connection exists between the whistle-blowing activity and the adverse employment action.

[Lippman v. Ethicon, Inc., 222 N.J. 362, 380 (2015) (quoting Dzwonar v. McDevitt, 177 N.J. 451, 462 (2003)); accord Puglia v. Elk Pipeline, Inc., 226 N.J. 258, 280 (2016).]

The statute of limitations for filing a CEPA claim is one year. N.J.S.A. 34:19-5. The accrual dates for discrete acts are the dates upon which the retaliatory or discriminatory events occurred. Roa v. Roa, 200 N.J. 555, 567 (2010) (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002)). "A plaintiff need not know with certainty that there is a factual basis for a claim under CEPA for the one year limitation period to be triggered; it is sufficient that he [or she] should have discovered that he [or she] may have a basis for a claim." Villalobos v. Fava, 342 N.J. Super. 38, 49 (App. Div. 2001).

When a claimant alleges "a pattern or series of acts, any one of which may not be actionable as a discrete act, but when viewed cumulatively constitute a hostile work environment[,]" the cause of action accrues "on the date on which the last act occurred . . . ." Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 21 (2002). Critically, however, this "continuing violation theory cannot be applied to sweep in an otherwise time-barred discrete act." Roa, 200 N.J. at 569. Indeed, our Supreme Court has explained that

27

> [t]he continuing violation theory was developed to allow for the aggregation of acts, each of which, in itself, might not have alerted the employee of the existence of a claim, but which together show a pattern of [retaliation]. In those circumstances, the last act is said to sweep in otherwise untimely prior non-discrete acts.
>
> What the doctrine does not permit is the aggregation of discrete [retaliatory] acts for the purpose of reviving an untimely act of [retaliation] that the victim knew or should have known was actionable. Each such "discrete [retaliatory] act starts a new clock for filing charges alleging that act."
>
> [Ibid. (quoting Morgan, 536 U.S. at 113).]

In their original third-party complaints, Buzby and Loesch alleged discrete retaliatory acts committed by Fromosky and Kehm. Specifically, they alleged that Fromosky had submitted several complaints to the Township, the Attorney General's Office, and the Governor's Office, in which he falsely alleged that Buzby and Loesch had committed misconduct. The third-party complaints articulated the dates of each alleged false complaint of misconduct filed by Fromosky. Concerning Kehm, Buzby and Loesch alleged that he had sent an email in early-May 2016, in which he falsely alleged that Buzby had been harassing him and committing retaliatory acts against him.

28

The allegations before May 30, 2016, are time barred. Moreover, neither Buzby nor Loesch have shown any adverse employment action caused by the actions of Fromosky or Kehm. Buzby filed his third-party complaint on May 31, 2017, and Loesch filed his third-party complaint on June 2, 2017. Thus, the only alleged retaliatory act committed by Fromosky within the limitations period was his filing of a complaint with the Township on September 1, 2016, in which he alleged Buzby and Loesch had conspired and released false information about him to intimidate and threaten him. The trial court dismissed the CEPA claim against Fromosky after finding the September 1, 2016 complaint did not constitute actionable retaliatory conduct under CEPA. We agree.

CEPA defines retaliation as "the discharge, suspension[,] or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J.S.A. 34:19-2(e). Nonetheless, "the universe of possible retaliatory actions under CEPA is greater than discharge, suspension, and demotion[,]" as evidenced by the statute's express inclusion of "'other adverse employment action taken against an employee in the terms and conditions of employment.'" Donelson v. DuPont Chambers Works, 206 N.J. 243, 257 (2011) (quoting N.J.S.A. 34:19-2(e)). Nevertheless, for an action to be adverse, it must be completed, and it must have had a significantly

negative effect on the employee's terms and conditions of employment. Beasley v. Passaic Cty., 377 N.J. Super. 585, 606-08 (App. Div. 2005) (citations omitted). That is, "not every employment action that makes an employee unhappy constitutes 'an actionable adverse action.'" Nardello v. Twp. of Voorhees, 377 N.J. Super. 428, 434 (App. Div. 2005) (quoting Cokus v. Bristol Myers Squibb Co., 362 N.J. Super. 366, 378 (Law Div. 2002), aff'd, 362 N.J. Super. 245 (App. Div. 2003)).

Here, there is no evidence demonstrating that the September 1, 2016 complaint had any effect on the terms and conditions of Buzby's or Loesch's employment, let alone a significant, negative effect. Buzby and Loesch contend the grant of summary judgment was inappropriate because discovery was just beginning when Fromosky filed his motion. "Although Rule 4:46-1 permits a party to move for summary judgment before the close of discovery, '[g]enerally, summary judgment is inappropriate prior to the completion of discovery.'" Branch v. Cream-O-Land Dairy, 459 N.J. Super. 529, 541 (App. Div. 2019) (alteration in original) (quoting Wellington v. Estate of Wellington, 359 N.J. Super. 484, 496 (App. Div. 2003)). Nonetheless, "[a] party opposing a motion for summary judgment on the grounds that discovery is incomplete . . . must 'demonstrate with some degree of particularity the likelihood that further

discovery will supply the missing elements of the cause of action.'" Ibid. (quoting Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 555 (2015)).

Buzby and Loesch have provided no explanation regarding how further discovery would supply evidence showing the September 1, 2016 complaint had a significant, negative effect on the terms and conditions of their employment, nor have they identified any discovery essential to show the alleged false complaint rose to the level of an adverse employment action. See DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 341-42 (App. Div. 2013). Accordingly, that discovery was just beginning, on its own, does not show summary judgment was inappropriate.

Finally, the trial court correctly concluded that the proposed amended CEPA claims were also legally deficient. Buzby and Loesch sought to add allegations that text messages sent by Kehm in September 2016 and Kehm and Gormley's communications with conflict counsel concerning the investigation into Buzby's cell phone reimbursement, which concluded in June 2016, were retaliatory actions under CEPA. In the proposed CEPA amendments, however, Buzby and Loesch do not identify any adverse employment action against them resulting from these additional allegations. Indeed, the record establishes that there was no change in their employment status or the conditions of their

employment. Accordingly, the proposed amendments would have been futile and the trial court correctly denied the motion to amend the CEPA claims.

To the extent that we have not addressed other arguments raised by Buzby and Loesch, it is because we deem those arguments to lack sufficient merit to warrant a discussion in this written opinion. See R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5028-17T2